[No. 38740. Department Two. July 7, 1966.]

JOHN MANGHAM et al., *Respondents,* v. GOLD SEAL CHIN-CHILLAS, INC., et al., *Petitioners.*\*

*E. Albert Morrison,* for petitioners.

*Smith Troy* and *John R. Kramer,* for respondents.

\*Reported in 416 P.2d 680.

DONWORTH, J.—This is a writ of certiorari to review a denial of two pretrial motions made by the defendant, Gold Seal Chinchillas, Inc. In addition to the corporate defendant, the complaint also named as defendants E. G. Streets and wife, who were alleged to be the corporation's controlling shareholders. They are sometimes herein referred to in the singular as petitioner or defendant. The first motion requested that the claims of the six different plaintiffs against the defendants, now included in one complaint, be severed and made a subject of six separate actions. The second motion requested that a change of venue from Thurston County to Pierce County be granted in four of the six suits, and to Multnomah County, Oregon, in the other two suits.

The Superior Court for Thurston County denied the motions by order, but rendered no opinion. Hence, we have no indication as to the basis for its denial of these motions. However, the parties urged on this court at the hearing of the writ of certiorari the same grounds that were apparently urged below. Accordingly, we conclude that the trial court accepted the grounds urged by plaintiffs-respondents in this matter, and rejected the grounds urged by defendant-petitioner.

The complaint of the plaintiffs alleged, among other things:

II. That the defendants named above falsely and fraudulently with intent to deceive and defraud the plaintiffs, and each of them, represented to said plaintiffs that:

. . . .

(5) The chinchillas offered for sale by defendants were "warranted" to score a minimum of 87 points on the Universal Scoring system by an independent fur judge.

(6) That the said chinchillas sold by defendants were accompanied by a pedigree card indicating their ancestry.

III. That said representations were false and were then and there known by the defendants to be false representations and that in truth and in fact . . . the animals sold to plaintiffs . . . were not accompanied by a true and correct pedigree card nor did they score the 87 points on the Universal Scoring system as represented . . . .

Interrogatories propounded by the defendants were served on the six plaintiffs and were answered. The answers to the interrogatories show that, although the contracts were separately made at various times between May, 1956 and January, 1962 through various salesmen employed by the defendants, all the sales were made by the use of a brochure and a sales presentation which was essentially the same in all six sales. Furthermore, the alleged representations and warranties concerning the pedigree and the quality of the fur of the animals sold were included in the written contracts signed by the parties and in the written materials and certificates presented to the buyer by the seller's salesmen. These warranties and pedigrees were on printed forms (brochures) containing essentially the same language. The question common to all six claims is whether defendants-petitioners authorized such sales presentations and warranties to be made in their behalf by the salesmen in the sale of their product, *i.e.*, chinchillas.

Petitioner has asked for a severance of the claims of the six plaintiffs on the ground that these claims are not properly joined as a matter of law under Rule of Pleading, Practice and Procedure 20. Petitioner has urged that (1) the claims are not a transaction or series of transactions within the meaning of the rule, and (2) that there is no common question of fact or law. In other words, petitioner urges that, as a matter of law, it is not possible to view the complaint as presenting claims which can be litigated together under Rule 20, which reads as follows:

(a) *Permissive Joinder.* All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defend-

ant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

This rule is not to be considered as an abrogation of RCW 4.08.040 dealing with joinder of husband and wife.

(b) *Separate Trials*. The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice.

We disagree with petitioner and agree with the trial court that it is permissible to join these claims under Rule 20.

The connection between these sales which makes them potentially a series of related transactions is that the sales presentation which was allegedly made by the several salesmen involved in these six claims is essentially the same. The plaintiff-respondents have averred that each salesman used the same brochure, and some of them used the same sales film strip, and that each made essentially the same representations and warranties to each respondent. This case is very similar to the case of *Akely v. Kinnicutt*, 238 N. Y. 466, 144 N. E. 682 (1924). In that case, the characteristic which caused the court to hold that the 193 separate purchases of shares of corporate stock constituted a series of related transactions was the prospectus which was relied on by each of the 193 different purchasers in purchasing certain shares of stock.

In the case at bar, the characteristic which we hold makes the six separate purchases of chinchillas a series of transactions is the use of the same brochure, the same sales representations (including the same warranties) made by all the salesmen employed by the defendant corporation. The fact that the transactions were separated in some instances by substantial periods of time or that the salesmen were different men (who were averred to be "independent contractors") is immaterial, in view of the pleadings and averments of respondents that each of these men made

essentially the same sales presentation to each of the six families who purchased the chinchillas. The allegations that the defendant corporation was the source of authority for the representations of essentially identical character made to these six purchasers of chinchillas is sufficient to show a "series of transactions" for the purpose of passing upon a pretrial motion for severance under Rule 20.

Petitioners have also claimed that there are no common questions of fact or law in this case. We disagree. The detailed evidence and the facts relating to each transaction must be separately proven at the trial. However, in view of the answers to the interrogatories now in the record, we are of the opinion that common questions of fact are involved, such as, were the essentially similar representations and warranties made by the salesmen authorized by the defendants? With regard to the common question of law, it is clear to us that the question of whether these essentially similar representations and warranties were fraudulently made is a common question of law.

Petitioners have cited and quoted from *Sun-X Glass Tinting of Mid-Wisconsin, Inc. v. Sun-X International, Inc.,* 227 F. Supp. 365, 374 (1964). Petitioners have argued that the *Sun-X* case, *supra,* is much more like the case at bar than the *Akely* case, *supra.* Respondents have argued to the contrary—that the *Akely* case, *supra,* is like the case at bar, and that the *Sun-X* case, *supra,* is different. We agree with respondents. In the opinion of the *Sun-X* case, *supra* at 374, the federal trial court stated:

> Each alleged fraud and misrepresentation by AGT evolved out [of] its own peculiar circumstances with 4 different plaintiffs.

In Akely v. Kinnicutt, 238 N.Y. 466, 144 N.E. 682 (1924), there were 193 plaintiffs suing defendant, alleging the fraudulent issuance of a prospectus, whereby the investors were induced to purchase shares of stock. The court held that the common question of whether the prospectus was fraudulent was enough to permit joinder. This was so, even though there were separate questions regarding the various plaintiffs as to whether they saw and relied on the prospectus.

It should be noted that in applying the Akely case to the one at bar, there is an important and controlling factual difference. In Akely the issuance of the prospectus was the genesis of the 193 claims. One event is the foundation for the causes of action. In the instant case, there was no one event or series of events related to each other which is the foundation of the 8 claims asserted in this action. There is no interrelated series of events or transactions producing the 8 claims.

■ It is precisely the point which was emphasized by the federal court in the above quotation that makes the *Akely* case, *supra,* applicable, and the *Sun-X* case, *supra,* inapplicable, to the case at bar. When, as alleged in the complaint in the present case, a company authorizes various salesmen to sell a certain specific product and supplies them with, and authorizes the use of, essentially the same sales presentation, the same sales aids, the same contract forms, and the sales agents go into the field and make their presentations at various times to various persons, who then contract and transact business with the company based on these authorized representations, we see no reason why the claims of fraud based on these sales cannot be litigated in one lawsuit. There is no significant legal distinction between the essential singleness of the representations alleged to have been made in this case and the singleness of the representations contained in a stock prospectus read by 193 different persons who purchased shares in 193 different transactions. Petitioner has not presented any convincing reason why the liability or nonliability on these six claims should not be litigated together.

We hold that respondents' claims fulfill the minimum requirements for permissive joinder under Rule of Pleading, Practice and Procedure 20. The trial court acted within its discretion in denying the motion for separate trials.

The second motion of petitioner was for a change of venue. The contracts of respondents Mangham and Prang contained the following provision:

In the event that the purchaser shall fail to pay any installment of the purchase price of the property, or of interest thereon at maturity, or violates any provision

of this agreement, or if the purchaser shall bring a suit or action on this contract or on any promissory note arising out of this contract, or on the subject matter of this contract, it is mutually agreed that such suit or action shall be brought only in Multnomah County, Oregon, the registered office of the seller, if such suit or action can lawfully be there brought in lieu of in some other jurisdiction.

The contracts of respondents Engle, Lowry, Sanders and Hanson contained the following provision:

In the event that the purchaser shall fail to pay any installment of the purchase price of the property, or of interest thereon at maturity, or violates any provision of this agreement or if the purchaser shall bring a suit or action on this contract or on any promissory note arising out of this contract, or on the subject matter of this contract, it is mutually agreed that such suit or action shall be brought only in Pierce County, Washington, if such suit or action can lawfully be there brought in lieu of in some other jurisdiction.

The change of venue statute upon which this second motion is based is RCW 4.12.030. It authorizes four grounds for a change of venue, in the discretion of the court. The statute reads:

The court may, on motion, in the following cases, change the place of trial when it appears by affidavit, or other satisfactory proof:

(1) *That the county designated in the complaint is not the proper county;* or,

(2) That there is reason to believe that an impartial trial cannot be had therein; or,

(3) That the convenience of witnesses or the ends of justice would be forwarded by the change; or,

(4) That from any cause the judge is disqualified; which disqualification exists in either of the following cases: In an action or proceeding to which he is a party, or in which he is interested; when he is related to either party by consanguinity or affinity, within the third degree; when he has been of counsel for either party in the action or proceeding. (Italics ours.)

The italicized portion is the ground alleged in petitioner's motion. The basis for the claim that the suits have been

filed in an improper county is one of the two venue provisions above quoted which were contained in the conditional sales contracts signed by respondents. It is the claim of petitioner that such agreements must be followed by the respondents, and that, if they bring the suits in any other county than the one specifically provided for in the contracts, the venue must be changed by the trial court upon the motion of the petitioner unless respondents show just cause why the venue should not be changed. It is the claim of petitioner that no suffiicent reason has been shown by respondents.

In order to put this problem in proper perspective, we acknowledge that the suits of the plaintiffs were brought in the proper county (Thurston County), unless the above-quoted agreements between the parties make it an improper county. The corporate defendant allegedly transacted business with respondents through its agents by authorizing them to sell chinchillas at the respective homes of respondents, all of which were situated in Thurston County. Under Rule of Pleading, Practice and Procedure 82.04W and RCW 4.12.025, petitioners may be sued in Thurston County because of this fact.

However, RCW 4.12.080 provides:

> Notwithstanding the provisions of RCW 4.12.030 all the parties to the action by stipulation in writing or by consent in open court entered in the records may agree that the place of trial be changed to any county of the state, and thereupon the court must order the change agreed upon.

This court has previously held in actions on contracts that the trial court must allow the suit to continue in the county in which it was brought when there was an agreement in the negotiable note on which the suit was based which provided that the maker, at the option of the holder, could be sued in the county in which action was brought. See *State ex rel. Schwabacher Bros. & Co. v. Superior Court,* 61 Wash. 681, 112 Pac. 927, Ann. Cas. 1912C 814 (1911).

In the *Schwabacher* case, *supra* at 683, this court stated:

The question therefore to be determined in this action is,

Did the defendant, by the agreement in the note, waive his right to demand a change of venue for the reasons stated in the motion? If the action had been brought originally in Chelan county, the residence of the defendant, there can be no doubt that the parties by stipulation might have agreed to the change to King county, for the statute, at § 216 [now RCW 4.12.080], expressly so provides. The policy of the law, therefore, is that the parties may agree that the place of trial shall be in any county of the state. If the parties may do this after the action is begun, they may certainly do so before; and this is clearly what they did.

■ In view of the holding and reasoning in the *Schwabacher* case, *supra,* we believe it is clear that the policy of this state is that, if the parties agree to a venue for a suit, the trial court cannot allow the suit to be brought in any county other than the one agreed on by the parties. The agreement must be brought to the attention of the court by timely motion, unless the party who opposes the change of venue shows some good reason why the agreement should not be enforced.

We realize that the *Schwabacher* case, *supra,* did not go that far, because that suit was brought in the county provided for in the contract. There were also other possible distinctions, such as the contractual nature of the action and the wording of the agreement, which made the choice of venue optional with the person bringing suit in that case. However, we do not believe that the fact that *Schwabacher* involved an action upon a contract (whereas the present case sounds in tort) in any way limits the policy of the law which favors the making and enforcing of such agreements as to the venue of the suit. Therefore, it is incumbent upon respondents to show why the particular agreements involved in this case should not be enforced.

According to authorities cited by petitioners, an agreement as to the place of either jurisdiction or venue of a suit will be enforced unless the agreement is unreasonble. See, for example, *Wm. H. Muller & Co. v. Swedish Am. Line Ltd.,* 224 F.2d 806 (2d Cir. 1955) 56 A.L.R. 295, *cert. denied* 350 U.S. 903, 100 L. Ed. 793, 76 Sup. Ct. 182 (1955).

Respondents argue that, even if it is proper to be able to stipulate to venue prior to the instigation of suit on a tort theory, nevertheless, the trial court should exercise discretion to consider the convenience of witnesses. Respondent cites for authority 2 Orland, Wash. Prac. 55 (2d ed. 1965). Respondent then gives as an example the hypothetical of a contract made in King County, with all the witnesses in King County but with a contractual provision setting venue in Asotin County.

There was no effort on the part of respondents to show that in this suit all the witnesses lived in Thurston County or that it was inconvenient for respondents to go to Pierce County for trial. Whether inconvenience of witnesses is sufficient to make the agreement for venue "unreasonable," we need not decide because the issue has not been properly raised by the record in this case. We do not believe that the discussion in the authority cited or the hypothetical example stated by respondent has any appropriate relevance to the four contracts which placed venue in Pierce County.

Respondents have shown no reason why the provisions placing venue in Pierce County should not be enforced. Therefore, it was error for the trial court to refuse to enforce the provisions placing venue in Pierce County, Washington.

With regard to the two contract provisions which placed venue in Multnomah County, Oregon (which has the additional effect of placing jurisdiction in Oregon rather than Washington), however, the problem is different. The contracts were made in Washington, and were to be wholly performed in Washington. The parties all reside in Washington. The note which was executed by Mr. Prang provided that "This contract is to be construed in all respects and enforced according to the laws of the State of Washington." Mr. Prang is one of the respondents whose conditional sales contract provided that venue of any suit would be placed in Multnomah County, Oregon. The only possible connection between the state of Oregon and this lawsuit, aside from the contract provision, is that the corporate petitioner

was incorporated in Oregon, even though it has its principal office in Tacoma, Washington. All of its more recent contracts apparently now provide for venue in Pierce County, Washington. We believe it is totally unreasonable to require these two respondents to go to Multnomah County, Oregon, when all the parties are in this state, all the witnesses are in this state, the contracts were made in this state, to be performed in this state, and the issues are to be decided according to the law of this state. The trial court's denial of the motion for change of "venue" with regard to the contracts of Mangham and Prang is, therefore, affirmed.

In summary, for the reasons given above, we hereby order the trial court to modify its ruling on the pretrial motion for change of venue to allow the transfer of venue of the suits of respondents Sanders, Engle, Hanson, and Lowry to Pierce County.

The suits of Mangham and Prang may be brought in Thurston County.

Nothing in this opinion should be construed to *require* that the Mangham and Prang causes must be brought in Thurston County.

The order of the trial court is affirmed except as to the modification above ordered. The case will be remanded to Thurston County Superior Court for further proceedings consistent with this opinion.

WEAVER, HUNTER, and HAMILTON, JJ., and WARD, J. Pro Tem., concur.