George LAMBERT, d/b/a Rainbow
Fruit, Plaintiff, Appellant,

v.

Sam KYSAR and Joan Kysar, d/b/a
Lewis River Tree Farm,
Defendants, Appellees.

Nos. 91–2244, 92–1029.

United States Court of Appeals,
First Circuit.

Heard May 7, 1992.

Decided Jan. 13, 1993.

Brian A. Gillis with whom Parker, Coulter, Daley & White, Boston, MA, was on brief for plaintiff, appellant.

James A. G. Hamilton with whom Perkins, Smith & Cohen, Boston, MA, was on brief for defendants, appellees.

Before CYR, Circuit Judge, CAMPBELL, Senior Circuit Judge, and FUSTE,* District Judge.

CYR, Circuit Judge.

George Lambert appeals a district court order dismissing his lawsuit for improper venue. We affirm.

## I

## BACKGROUND

Appellant Lambert owns and operates the Rainbow Fruit Company in Boston, Massachusetts, which sells Christmas trees and wreaths at retail during the holiday season. Appellees Sam and Joan Kysar operate a Christmas tree farm in Woodland, Washington. From 1987 through 1989, Lambert purchased Christmas trees at wholesale from the Kysars pursuant to a written form contract signed by both parties. The front of the order form contained spaces in which the size, grade, quantity, and price of each Christmas tree order could be filled in; a small space at the bottom of the page, denominated "other", was used by the parties to note additional

---

* Of the District of Puerto Rico, sitting by designation.

terms and conditions. The back of the order form stated the fixed terms of the contract and provided, *inter alia*, that

"[t]he terms and conditions of the order documents applicable to this transaction shall be interpreted under the case and statutory law of the State of Washington. In the event any action is brought to enforce such terms and conditions, venue shall lie exclusively in Clark County, Washington."

In July 1989, the Kysars visited Boston to discuss Lambert's needs for the upcoming Christmas season. On their return to Washington, they sent Lambert an order form, filled out and signed by Joan Kysar. The numbers handwritten on the form by Joan Kysar provided for an order of 2600 Christmas trees at $11.60 apiece. At the bottom of the form, in the space marked "other", Kysar wrote that the order was "[b]ased on 4 loads of 650 trees each. All trucks will be loaded to capacity. 25% deposit ... balance due on or before 12/10/89."

Lambert received the order form in late July, but apparently thought that it overstated the quantity of trees needed for the next season. Writing on the same order form submitted by the Kysars, he changed the notation "4 loads of 650 trees each," to read "3 loads of 550 trees", and changed the total number ordered from "2600" to "1650." Lambert also recomputed the total amount due and the amount of the required 25% deposit. He inserted the new figures over Joan Kysar's handwritten figures at the bottom of the form, and returned the form to the Kysars. He made no change to the $11.60 unit price or to any other contract provision.

On August 21, 1989, in a letter to Sam and Jean Kysar, Lambert enclosed a $4785 check "for payment of the deposit on our tree order", and stated his understanding "that shipping will be the same as last year. There will be three loads of 1,650

trees at $11.60 for a total cost of $19,140." The record on appeal does not indicate whether the Kysars received Lambert's letter, cashed his deposit check, or issued any written response, but on November 20, 25 and 29, in accordance with the instructions on the altered order form, the Kysars sent Lambert the requested 1,650 trees, in three loads, by overland truck. Following delivery of the trees on November 25, 29, and December 1, Lambert's inspection allegedly revealed that the trees "were dry, not fresh, and appeared old." Citing the allegedly defective condition of the trees, Lambert refused to pay the balance claimed by the Kysars.

In June, 1991, the Kysars filed suit in Clark County, Washington, to recover the balance claimed due. In September, 1991, Lambert filed the present countersuit against the Kysars in Massachusetts Superior Court, alleging misrepresentation, breach of contract, breach of implied warranty, and unfair business practices under Mass.Gen.L. ch. 93A. The Kysars removed Lambert's suit to federal district court and moved to dismiss under Federal Rules 12(b)(3) and 12(b)(6), alleging improper venue and failure to state a claim on which relief could be granted.[1]

On November 18, 1991, the motion to dismiss was granted without hearing, by margin order: "[The defendants'] motion to dismiss is allowed. According to the terms of contract[,] suit must be filed in State Court in Washington." We review the district court dismissal order *de novo*. See *Edwards v. John Hancock Mut. Life Ins. Co.*, 973 F.2d 1027, 1028 (1st Cir.1992); *see also Instrumentation Assocs., Inc. v. Madsen Electronics (Canada) Ltd.*, 859 F.2d 4, 5 (3d Cir.1988) (*de novo* review of forum selection clause dismissal under Rule 12(b)(6)); *compare, e.g., Pelleport Investors, Inc. v. Budco Quality Theatres*, 741 F.2d 273, 280 n. 4 (9th Cir.1984)

---

1. The Kysars invoked Rule 12(b)(3) as the procedural vehicle for urging dismissal under the forum selection clause in the order form. We have held that such dismissals are founded on Rule 12(b)(6), *see LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.*, 739 F.2d 4, 7 (1st

Cir.1984). No matter, however, since "we are not bound by the label employed below, and we agree that the case should have been dismissed." *See id.* (quoting *Carr v. Learner*, 547 F.2d 135, 137 (1st Cir.1976)).

("abuse of discretion" review of forum selection clause dismissal under Rule 12(b)(3)).

## II

## DISCUSSION

 The order form filled out by Joan Kysar, and amended by Lambert in July 1989, provided, *inter alia*, that "[i]n the event any action is brought to enforce [the] terms and conditions [of the order documents], venue shall lie exclusively in Clark County, Washington." The Kysars assert, and the district court impliedly found, that the order form expressed the terms and conditions of the agreement between the parties and that Lambert is bound by the choice of forum made in the order form. Lambert vigorously disagrees. According to Lambert, the changes he made to the quantity term on the Kysars' order form amounted to a material alteration (and therefore a rejection) of the Kysar offer, paving the way for a counteroffer in the form of Lambert's August 21 letter. Since the August 21 letter contained neither a forum selection clause nor an express choice-of-law provision, Lambert asserts

that venue and choice-of-law rules are to be determined under general common-law and statutory principles. In particular, Lambert asserts, the Massachusetts venue remains proper under the general rules applicable to removed cases in federal courts, *i.e.*, 28 U.S.C. § 1441.[2]

We agree with the first part of Lambert's argument. The changes Lambert made to the quantity term amounted to a rejection under Article 2 of the Uniform Commercial Code, and the Kysars' performance of the new contract amounted to an acceptance of the new terms proposed by Lambert. We disagree with the second part of Lambert's argument, however. Lambert's counteroffer was made in July, when he amended the order form containing the Kysars' original offer, *not* in Lambert's August 21 letter. Accordingly, the counteroffer incorporated the unamended terms and conditions contained in the original offer, including its venue and choice-of-law clauses. Since the venue clause—impliedly mandating a Washington forum—is enforceable under both state and federal common law, the district court properly dismissed the action.

**2.** Lambert's opposition to the Kysars' motion to dismiss also seems to assert: (1) that the Kysars waived their right to plead improper venue by filing the removal petition, thereby implicitly acknowledging the district court's authority to hear the case; and (2) that even if the removal petition did not constitute a *per se* waiver of their right to plead improper venue, in the present case waiver can be implied from the representation made in the removal petition that "[v]enue in [Massachusetts federal] Court [was] proper under 28 U.S.C. § 1391." Neither assertion is sound. Although it is axiomatic that a defendant must mount any challenge to venue at the earliest possible opportunity, *see Graver Tank & Mfg. Corp. v. New England Terminal Co.*, 125 F.2d 71, 74 (1st Cir.1942), the Kysars properly preserved their right to challenge venue by raising it in the state court action and renewing it in their first pleading following removal. It is well settled that the filing of a removal petition in a diversity action, without more, does not waive the right to object to federal court to the state court venue. In order to obtain the benefits of a federal forum in diversity cases, "[the] removal *must be* 'into the district where such suit is pending' [; n]o choice is possible and for that reason nothing in respect to venue can be waived." *Moss v. Atlantic*

*Coast Line R. Co.*, 157 F.2d 1005 (2d Cir.1946), *cert. denied*, 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286 (1947) (emphasis added).

This analysis is not altered by the Kysars' assertion, in their removal petition, that venue in Massachusetts federal district court was proper under 28 U.S.C. § 1391. Even if their assertion could be construed as a waiver of any objection to venue under 28 U.S.C. § 1391, the venue of a removed action is not governed by § 1391, but by 28 U.S.C. § 1441(a). Indeed, removal of an action to a proper forum under § 1441(a) frequently has been considered a waiver or cure of any defect in the original venue of the removed action under 28 U.S.C. § 1391. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665, 73 S.Ct. 900, 902, 97 L.Ed. 1331 (1953); *Seaboard Rice Milling Co. v. Chicago, R.I. & P.R. Co.*, 270 U.S. 363, 46 S.Ct. 247, 70 L.Ed. 633 (1926); *Minnesota Mining & Mfg. Co. v. Kirkevold*, 87 F.R.D. 317, 321–22 (D.Minn. 1980); *Tanglewood Mall, Inc. v. Chase Manhattan Bank*, 371 F.Supp. 722, 725 (W.D.Va.), *aff'd*, 508 F.2d 838 (4th Cir.1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1975). Here, of course, a different issue is presented, since a valid forum selection clause operates to render the venue improper, *not only* under § 1391, *but also* under § 1441(a).

### A. *The Contract*

The parties disagree on whether a Massachusetts court would apply Massachusetts or Washington law to the formation of their contract. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (federal court sitting in diversity must apply forum state's choice-of-law rules). We need not resolve the issue, however, as the outcome is the same under the substantive law of either jurisdiction. *See Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 332, 450 N.E.2d 581, 584 (1983) ("the usual first step in applying conflict of laws principles is to determine whether there is a conflict among the laws of the various states involved").

■ Christmas trees are "goods" within the meaning of Uniform Commercial Code, Article II, as adopted in both Massachusetts and Washington.[3] Moreover, the common law of both jurisdictions, which remains in force under the U.C.C. except as displaced, *see* U.C.C. 1–103, Mass.Gen.L. ch. 106 § 1–103, Wash.Rev.Code 62A.2–103, supports the validity and enforceability of the subject contract, including its forum selection clause.

■ Under the law of both Massachusetts and Washington, the order form (signed and forwarded to Lambert in July 1989) comprised an offer to contract in accordance with its terms.[4] It set forth in detail all the material terms essential to the proposed transaction, including the price, quantity and quality of the goods. It provided a space for Lambert's signature, to indicate that he had "read and accept[ed] the Terms of Sale on the reverse side of th[e] document." It included the signature of Joan Kysar, an officer of Lewis River Tree Farm, indicating assent to be bound. *See* Restatement (Second) of Contracts § 24 (offer is "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it"); *Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp.*, 445 F.Supp. 537, 544 (D.Mass.1977) ("an offer is made when the offeror leads the offeree to reasonably believe that an offer has been made"). Although the back of the form included a provision for "approval" by the Lewis River Tree Farm's "main office", Joan Kysar's status as an officer of the company and her signature on the front of the form reasonably denoted such approval. *Compare Kuzmeskus v. Pickup Motor Co.*, 330 Mass. 490, 493, 115 N.E.2d 461, 464 (1953) (contract proffered by company's general manager, which contained clause requiring authorization by seller's corporate officer, and *blank space* for officer's signature, held to be "no more than an invitation or request to give orders on the terms and conditions therein stated"; "[i]f the general manager was an officer of the company with power to authorize the sales, he said or did nothing to inform the

---

3. Christmas trees have been described as "growing crops or other things attached to realty and capable of severance without material harm thereto," U.C.C. § 2–107, Mass.Gen.L. ch. 106 § 2–107(2) (1979); Wash.Rev.Code 62A.2–107(2). *See Groth v. Stillson*, 20 Mich.App. 704, 174 N.W.2d 596, 598 (1969); *cf. Rainier Nat'l Bank v. Security State Bank*, 59 Wash.App. 161, 796 P.2d 443 (1990), *rev. denied*, 117 Wash.2d 1004, 815 P.2d 266 (1991) (Christmas trees are "growing crops" for purposes of Article 9). Alternatively, though somewhat less plausibly, the parties' July arrangement for delivery of Christmas trees might be viewed as a contract for sale of "timber to be cut." U.C.C. § 2–107, Mass. Gen.L. ch. 106, § 2–107(2) (1979); Wash.Rev. Code 62A.2–107(2). In either event, a sale of Christmas trees is a "transaction in goods" governed by the Uniform Commercial Code. *See* U.C.C. § 2–105, Mass.Gen.L. ch. 106 § 2–105(1); Wash.Rev.Code 62A.2–105; *see also Traynor v. Walters*, 342 F.Supp. 455, 459 (M.D.Pa.1972); *Kirk Co. v. Ashcraft*, 101 N.M. 462, 684 P.2d 1127 (1984); *Whewell v. Dobson*, 227 N.W.2d 115, 117 (Iowa 1975).

4. As the evidentiary foundation for determining the formation of the parties' contract was either undisputed or consisted of writings, Lambert's present challenge raises issues of law for the court. *Ismert & Associates, Inc. v. New England Mut. Life Ins. Co.*, 801 F.2d 536 (1st Cir.1986) (citing *David J. Tierney, Jr., Inc. v. T. Wellington Carpets, Inc.*, 8 Mass.App.Ct. 237, 239, 392 N.E.2d 1066, 1068 (1979)); *Bresky v. Rosenberg*, 256 Mass. 66, 75, 152 N.E. 347, 351 (1926); *R.J. Menz Lumber Co. v. E.J. McNeeley & Co.*, 58 Wash. 223, 229, 108 P. 621, 624 (1910). Lambert adverts to no other evidence which would alter the result reached here.

plaintiff that he was taking favorable action").

 Under the law of both Washington and Massachusetts, Lambert's substitution of a substantially lower quantity term amounted to a rejection of the Kysars' offer to sell, and a counteroffer to purchase the lesser quantity of trees.[5] *See Minneapolis & St. L.R. v. Columbus Rolling–Mill Co.*, 119 U.S. 149, 7 S.Ct. 168, 30 L.Ed. 376 (1886) (order for 1200 tons of steel rails indicated rejection of offer to sell 2000–5000 tons of rails); *see generally* Restatement (Second) of Contracts § 59 ("a reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counteroffer"); *Banks v. Crescent Lumber & Shingle Co.*, 61 Wash.2d 528, 530–31, 379 P.2d 203 (1963); *Owens–Corning Fiberglas Corp. v. Fox Smith Sheet Metal Co.*, 56 Wash.2d 167, 170, 351 P.2d 516, 518 (1960); *Champlin v. Jackson*, 317 Mass. 461, 463–64, 58 N.E.2d 757 (1945); *Kehlor Flour Mills v. Linden*, 230 Mass. 119, 123, 119 N.E. 698 (1918). Lambert's counteroffer to purchase, made on the same form as the Kysars' offer to sell, and containing Lambert's signature indicating that he had "read and accept[ed] the Terms of Sale on the reverse side," incorporated all the unamended terms in the original offer form; that is, all its terms except the quantity of trees.[6] *See Construction Aggregates Corp. v. Hewitt–Robins Inc.*, 404 F.2d 505 (7th Cir.1968), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1774, 23 L.Ed.2d 238 (1969) (seller's stated objection to one term of counteroffer may be treated as acquiescence in remaining terms); *cf. Romala Corp. v. United States*, 927 F.2d 1219, 1221 (Fed. Cir.1991) (seller's submission of purchaser's bid form, altering some paragraphs but not others, amounted to acquiescence in unaltered terms).

Since Lambert's alteration of the quantity term amounted to a *rejection* of the original offer, rather than a mere *modification* or *supplementation* of the boilerplate language in the original offer form, this is not an appropriate case for the application of U.C.C. § 2–207–(2), Mass.Gen.L. ch. 106 § 2–207(2), Wash.Rev.Code 62A.2–207(2). *See, e.g., Duval & Co. v. Malcom*, 233 Ga. 784, 787, 214 S.E.2d 356, 358 (1975) (holding § 2–207 inapplicable where offer and purported acceptance differed on quantity of goods to be sold); *see generally* James J. White & Robert S. Summers, *Uniform Commercial Code*, § 1–3, p. 33 (3d ed.1980) [hereinafter: *White & Summers*] (suggesting inapplicability of U.C.C. § 2–207 in cases of substantial divergence, *e.g.*, where forms "diverge as to price, quality, *quantity*, or delivery terms") (emphasis added). Since U.C.C. § 2–207 is inapplicable to the facts of this case, we need not consider the apparent conflict between our interpretation of § 2–207 in *Roto–Lith, Ltd. v. F.P. Bartlett & Co.*, 297 F.2d 497 (1st Cir.1962), and the interpretation adopted by the courts of Washington and other jurisdictions.[7]

---

5. Our analysis makes it unnecessary to address Lambert's argument that the same result might be reached by crediting the printed condition on the reverse side of the order form: "No modifications of the terms of this agreement shall be effective unless reduced to writing and executed in writing by both parties hereto."

6. Lambert's August 21, 1989 letter of confirmation ratified and reconfirmed the terms of his counteroffer. The letter referred to "our tree order" and enclosed a deposit for the quantity of trees Lambert ordered. Nowhere did it indicate that the counteroffer was being revoked or made conditional on an assent to any additional term.

7. *Roto–Lith* holds, as a matter of Massachusetts law, that a purported acceptance "which states a condition materially altering the obligation solely to the disadvantage of the offeror" operates as a counteroffer expressly conditioned on the offeror's assent to the additional term. 297 F.2d at 500; *see also Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 55 (1st Cir.1986) (citing *Roto–Lith*); *Gilbert & Bennett Mfg.*, 445 F.Supp. at 546 (same). The *Roto–Lith* rule has never been repudiated by the Massachusetts Supreme Judicial Court ("SJC"), though it has been received critically by commentators, *see, e.g., White & Summers* at 33, and its precedential value has been questioned. *See Polyclad Laminates, Inc. v. Vits Maschinenbau GmBH*, 749 F.Supp. 342, 344 (D.N.H.1990); *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 687 F.Supp. 820, 828 n. 19 (S.D.N.Y.1988).

The Washington Supreme Court appears not to have ruled on the issue, but in *Hartwig Farms, Inc. v. Pacific Gamble Robinson Co.*, 28

Whether the Kysars accepted Lambert's counteroffer in August, by accepting his deposit check, *see Rockwood Mfg. Corp. v. AMP, Inc.,* 806 F.2d 142, 144–145 (7th Cir.1986) ("the act of cashing a check can function as an acceptance of an offer in certain circumstances") (collecting cases); *cf. Hobbs v. Massasoit Whip Co.,* 158 Mass. 194, 197, 33 N.E. 495, 495 (1893) ("conduct which imports acceptance or assent is acceptance or assent in the view of the law"), or by seasonably shipping the number of Christmas trees requested in Lambert's counteroffer, *see* U.C.C. § 2–206(1) ("an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable under the circumstances"); *see also* U.C.C. § 2–206(2) ("an offer to buy goods for prompt or current shipment shall be construed as inviting acceptance ... by the prompt or current shipment of conforming or nonconforming goods"), under the law of both Washington and Massachusetts the Kysars accepted Lambert's counteroffer by November 1989 at the latest. The Kysars' acceptance, whenever it is deemed to have occurred, operated under the law of both jurisdictions to bind the contracting parties to all terms printed on the reverse side of the original order form, including the forum selection clause.[8]

## B. *The Forum Selection Clause*

We turn to the forum selection clause. Federal courts have long enforced forum selection clauses as a matter of federal common law. *See The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (forum clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"); *Docksider, Ltd. v. Sea Technology, Ltd.,* 875 F.2d 762, 764 (9th Cir.1989) ("The prevailing rule is clear ... that where venue is specified with mandatory language the clause will be enforced"). Washington state law on the validity and enforcement of forum selection clauses is drawn from the Restatement (Second) of Conflict of Laws, *see Exum v. Vantage Press, Inc.,* 17 Wash.App. 477, 478, 563 P.2d 1314, 1315 (1977), which appears generally to accord with federal common law. *See Zapata,* 407 U.S. at 11 and n. 13, 92 S.Ct. at 1913 and n. 13 (citing Restatement (Second) of Conflict of Laws § 80); *see also* Willis Reese,[9] *Supreme Court Supports Enforcement of Choice of Forum Clauses,* 7 Intl.L. 530 (1972) [*"Supreme Court Supports Enforcement"*] (expressing view that *Zapata* analysis should be persuasive in state law context). Thus, as we discern no material discrepancy between Washington state law and federal law, we need confront neither the choice-of-law issue nor the daunting question whether forum selection clauses are to be treated as substantive or procedural for *Erie* purposes.[10] *See Coastal Steel Corp.*

Wash.App. 539, 543–44, 625 P.2d 171, 174 (1981), the Washington Court of Appeals expressly declined to follow *Roto–Lith,* holding that the addition of a material term in the buyer's acceptance did not amount to a rejection. Rather, the terms on which parties do not expressly agree "dropped out" of the contract and were replaced (where possible) by the U.C.C.'s "gap-filler" provisions. *See, e.g.,* U.C.C. 2–306(1), Wash.Rev.Code 62A.2–306(1) (implying quantity term in output and requirements contracts; measuring quantity in these cases by "such actual output or requirements as may occur in good faith"). *See generally White & Summers,* at 38–40 (3d ed. 1988) (collecting cases, and discussing proper interpretation of UCC § 2–207).

8. Lambert makes no claim that the forum selection clause was insufficiently conspicuous.

9. Professor Reese served as Reporter for the Restatement (Second).

10. The Supreme Court has yet to provide a definitive resolution of the *Erie* issue, *see Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 28–29, 108 S.Ct. 2239, 2243–44, 101 L.Ed.2d 22 (1987) (declining to reach *Erie* issue), which has divided the commentators and split the circuits. The Second, Ninth and Eleventh Circuits essentially treat forum clauses as procedural, and apply federal common law to determine their validity in diversity cases. *See Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990); *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509 (9th Cir.1988); *Stewart Organization v. Ricoh Corp.,* 810 F.2d 1066 (11th Cir.1986) (en banc), *aff'd on other grounds,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *see also Taylor v. Titan Midwest Constr. Corp.,* 474 F.Supp. 145 (N.D.Tex.1979) (applying federal common law on policy grounds, without considering *Erie* issue); *cf. Northwestern Nat'l. Ins. Co. v. Donovan,* 916 F.2d 372, 374 (7th Cir.1990) (Posner, J.)

*v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3rd Cir.1983) (declining to reach *Erie* issue because state law and federal law did not conflict).

Relying on early Massachusetts decisions, however, Lambert argues that forum selection clauses which oust the jurisdiction of Massachusetts courts are unenforceable under Massachusetts law. *See Nashua River Paper Co. v. Hammermill Paper Co.*, 223 Mass. 8, 111 N.E. 678 (1916); *see also Nute v. Hamilton Mut. Ins. Co.*, 72 Mass. (1 Gray) 174 (1856) (intrastate forum clause); *cf. Cadillac Auto. Co. v. Engeian*, 339 Mass. 26, 29, 157 N.E.2d 657, 659 (1959) (holding forum selection clauses "generally" unenforceable under Massachusetts law, but noting conflicting caselaw authority, and declining to reach the issue). It is true that these decisions are still cited and followed, at least in circumstances where the defendant invokes a forum selection clause in an attempt to deprive the Massachusetts forum of jurisdiction. *See J.S.B. Industries v. Bakery Machinery Distrib.*, 1991 Mass.App.Div. 1, 1–2, 1991 WL 35235 (1991) (holding contractual selection of New York forum unenforceable under Massachusetts law); *see also Northeast Theatre Corp.*, 563 F.Supp. at 834 (stating, in dictum, that contractual selection of California forum would be unenforceable under Massachusetts law); *compare Graphics Leasing Corp. v. The Y Weekly*, 1991 Mass.App.Div. 110, 1991 WL 154794 (1991) (holding forum selection clause enforceable where parties sought to designate Massachusetts forum); *Diversified Mortg. Investors v. Viking Gen. Corp.*, 16 Mass.App.Ct. 142, 450 N.E.2d 176, 179 (1983) (suggesting enforceability of forum clause designating Massachusetts forum). Recently, however, the SJC has indicated (in dictum) a more receptive view toward forum selection clauses, *see W.R. Grace & Co. v. Hartford Accident & Indem. Co.*, 407 Mass. 572, 582 n. 13, 555 N.E.2d 214, 219 n. 13 (1990) ("we see nothing inherently inappropriate in a forum selection clause"), which appears to accord with the view adopted by most other state courts, *see* Francis M. Dougherty, Annotation, *Validity of Contractual Provision Limiting Place or Court in Which Action May Be Brought*, 31 A.L.R. 4th 404 (1992), and with the prevailing federal court view that forum clauses foster policy interests important to the parties and the courts. *Zapata*, 407 U.S. at 8, 92 S.Ct. at 1912; *Stewart Organization*, 487 U.S. at 33, 108 S.Ct. at 2245 (Kennedy and O'Connor, JJ., concurring); *see Fireman's Fund Am. Ins. Cos. v. Puerto Rican Forwarding Co.*, 492 F.2d 1294, 1297 (1st Cir.1974); *Northeast Theatre Corp.*, 563 F.Supp. at 834; *see also Ernest & Norman Hart Bros., Inc. v. Town Contractors, Inc.*, 18 Mass.App.Ct. 60, 64, 463 N.E.2d 355, 358–59 (1984), *rev. den.*, 392 Mass. 1103, 465 N.E.2d 262 (1984) (surveying caselaw, noting that "the general attitude of courts towards contractual forum selection provisions obviously has changed in the direction of recognizing them", and suggesting that *Nashua River*

(suggesting that the application of federal common law is "probably correct"). The Third and Eighth Circuits, and Justice Scalia (who sought to reach the *Erie* issue in *Stewart*), seem to view forum selection clauses as substantive, and would apply state law to determine their validity in the diversity context. *See Stewart Organization*, 487 U.S. at 38–41, 108 S.Ct. at 2248–49 (Scalia, J., dissenting); *General Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3rd Cir.1986); *Farmland Indus. v. Frazier–Parrott Commodities, Inc.*, 806 F.2d 848 (8th Cir. 1986); *but see Sun World Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066, 1069 (8th Cir. 1986) (applying federal common law) (alternate holding). This court has yet to take a position on the issue, although district courts within the circuit have endorsed the Ninth and Eleventh Circuit approach, *see, e.g., Northeast Theatre*

*Corp. v. Edie & Ely Landau, Inc.*, 563 F.Supp. 833 (D.Mass.1983), and on one occasion we tentatively treated a forum selection clause as procedural for the limited purposes of the factor analysis required under the forum non conveniens doctrine articulated in *Gulf Oil v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *See Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 49 (1st Cir.1990). The complexities of the issue have been well documented in several student notes. *See, e.g.,* Robert A. de By, Note, *Forum Selection Clauses: Substantive or Procedural for Erie Purposes*, 89 Colum.L.Rev. 1068 (1989); Julia L. Erickson, *Forum Selection Clauses in Light of the Erie Doctrine and Federal Common Law: Stewart Organization v. Ricoh Corporation*, 72 Minn.L.Rev. 1090 (1988).

and *Nute, see supra* at p. 1117, no longer express viable policy in light of evolving federal doctrine). The current status of Massachusetts law on this issue has been termed "unclear," *Geiger v. Keilani,* 270 F.Supp. 761, 766 (E.D.Mich.1967), and the vitality of the *Nute* and *Nashua River* precedents clouded. "Attorneys advising clients probably would be unwise to rely on the persistence of the *Nute* principle in future Massachusetts cases.... [although] counsel ... even now cannot be certain ... that Massachusetts will follow [the] newer view [expressed in *Zapata*]. If the Supreme Judicial Court should now decide to do so, it well may adopt the modern view prospectively only and in very flexible form ...," *Ernest & Norman Hart Bros.,* 18 Mass.App.Ct. at 64, 463 N.E.2d at 359; *but see Scheck v. Burger King Corp.,* 756 F.Supp. 543, 546 (S.D.Fla.1991) (assuming, without discussion, that Massachusetts courts now would follow federal law, as enunciated by the First Circuit, and uphold prima facie validity of forum selection clauses).

 The viability of *Nute* and *Nashua River* is not determinative in the present case, however, as we think the Massachusetts courts, consistent with the contracting parties' intention, would apply Washington law to determine the enforceability of the forum selection clause.[11] *See* Michael Gruson, *Forum–Selection Clauses in International and Interstate Commercial Agreements,* 1982 U.Ill.L.Rev. 133, 156 & n. 228 [*Forum Selection Clauses*] ("most states determine the enforceability of forum-selection clauses under the law governing the contract"). The present contract provides that the interpretation of the "terms and conditions of the order documents," including the forum selection clause, must be governed by Washington law; and even though Massachusetts law on the enforcement of forum clauses is unsettled, its courts routinely enforce choice-of-law provisions unless the law chosen violates established public policy or bears no reasonable relationship to the contractual transaction between the parties. *See* Mass.Gen.L. 106, § 1–105(1); *Morris v. Watsco, Inc.,* 385 Mass. 672, 674–75, 433 N.E.2d 886, 887 (1982); *Comdisco Disaster Recovery Servs. v. Money Management Systems, Inc.,* 789 F.Supp. 48, 52 (D.Mass. 1992). The *Nute* and *Nashua River* cases did invoke public policy justifications for resisting forum selection clauses, *viz.,* the dangers of overreaching and the difficulties of applying foreign law in a chosen forum. But even these earlier decisions "place[d] no great reliance upon" these public policy considerations, *Nute,* 72 Mass. (1 Gray) at 184, which have been undercut in any event by more recent legal and historical developments.[12] We think the di-

---

11. This approach, which relies on the contracting parties' choice of law as a basis for determining the enforceability of their forum selection, has been criticized on the ground that "jurisdiction and venue are concerns separate from choice of law, and ... determining the former usually precedes determination of the latter." *See* Linda S. Mullenix, *Another Choice of Forum, Another Choice of Law: Consensual Adjudicatory Procedure in Federal Court,* 57 Fordham L.Rev. 291, 347 (1988); *see also Instrumentation Assocs.,* 859 F.2d at 5 (holding that "[lower] court erred by deciding the validity of the contract's choice of law before considering the threshold question of whether the parties' contractual choice of a Canadian forum was enforceable under the conflict of laws principles embodied in *Erie*"). We do not agree.

It is well established that a forum selection clause does not *divest* a court of jurisdiction or proper venue over a contractual dispute. Rather, a court addressing the enforceability of a forum selection clause is to consider whether it must, *in its discretion, decline* jurisdiction and defer to the selected forum. *See Zapata,* 407 U.S. at 12, 92 S.Ct. at 1914; *LFC Lessors,* 739 F.2d at 6–7. Thus, the constitutional concerns which prompt the rule that determination of jurisdictional issues should "usually precede" determination of substantive law apply only weakly, if at all, in forum selection cases following *Zapata.* Moreover, following *Norton v. Mathews,* 427 U.S. 524, 528–33, 96 S.Ct. 2771, 2773–76, 49 L.Ed.2d 672 (1976), we repeatedly have held that complex jurisdictional issues may be bypassed in circumstances where it is clear that the party challenging jurisdiction will prevail on substantive grounds in any event. *See, e.g., Howard v. Rhode Island Hospital Trust,* 980 F.2d 823, 829 (1st Cir.1992). Thus, we may bypass the *Erie* analysis, where state law provides a straightforward *substantive* basis for resolving the present controversy.

12. The *Nute* court expressed the view that "the greatest inconvenience [of contractual forum transfers] would be in requiring courts and juries to apply different rules of law in different

minishing importance of the policies cited in these earlier cases, their waning support in more recent Massachusetts decisions, and the increasing role and vigor of federal doctrine, would leave a Massachusetts court unconstrained by the same policy considerations in applying the parties' chosen law to the choice-of-forum determination in the present case. *See* Restatement (Second) of Contracts § 178(3) ("in weighing a public policy against enforcement of a term, account is taken of (a) the *strength of that policy* as manifested by legislation or judicial decisions...") (emphasis added). As we discern no significant public policy militating against the application of Washington law in the present circumstances, and Washington law obviously bore a reasonable relationship to the contract between the parties, we think the Massachusetts courts would enforce the parties' choice of Washington law.

cases, in the conduct of suits," 72 Mass. (1 Gray) at 184. It also noted that "contracts [including forum clauses] might be induced by considerations tending to bring the administration of justice into disrepute, such as the greater or less intelligence and impartiality of judges, the greater or less integrity and capacity of juries, [and] the influence, more or less, arising from the personal, social or political standing of parties in one or another [jurisdiction]." *Id.*

We think that modern caselaw developments, including the Massachusetts courts' willingness to entertain motions to dismiss based on the doctrine of forum non conveniens, *see Universal Adjustment Corp. v. Midland Bank, Ltd.,* 281 Mass. 303, 184 N.E. 152 (1933) (Rugg, J.), to permit forum selection clauses in contracts principally involving nonresidents, *Mittenthal v. Mascagni,* 183 Mass. 19, 23, 66 N.E. 425 (1903), and to enforce forum selection clauses which vest jurisdiction in Massachusetts courts, *see Graphics Leasing,* 1991 Mass.App.Div. at 111, suggest that Commonwealth courts have largely abandoned any policy concern that the contracting parties' mutual selection of a non-Massachusetts forum will impugn "the dignity or convenience of the [Massachusetts] courts." *Id.* Furthermore, the Commonwealth ·courts' more recent acceptance of contracting parties' choice-of-law provisions, *Morris,* 385 Mass. at 674, 433 N.E.2d 886, and of "flexible" choice-of-law rules, *Bushkin Assoc. v. Raytheon Co.,* 393 Mass. 622, 473 N.E.2d 662 (1985), would appear to erode *Nute*'s earlier endorsement of the view that the application of "different rules of law in different cases" would lead to "great[ ] inconvenience" for courts or juries.

## C. *Reasonableness of Washington Forum*

■ Under federal law and Washington state law, the contracting parties' forum selection is to be respected unless the challenging party "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Zapata,* 407 U.S. at 15, 92 S.Ct. at 1916; *see also Exum,* 17 Wash.App. at 478–79, 563 P.2d at 1315; *cf. Mangham v. Gold Seal Chinchillas, Inc.,* 69 Wash.2d 37, 45, 416 P.2d 680, 686 (1966) (intrastate agreement); *Bechtel Civil & Minerals, Inc. v. South Columbia Basin Irrig. Dist.,* 51 Wash. App. 143, 146, 752 P.2d 395, 396 (1988) (same). Any alleged overreaching must be based on something more than the mere fact that the clause was a "boilerplate" provision printed on the back of a form contract. *See Donovan,* 916 F.2d at 377. "It is not the law that one must bargain for

*Nashua River,* decided after *Nute,* noted that the rule against enforcement of forum selection clauses "related to a matter as to which uniformity of decision and harmony of law among the several jurisdictions of this country is desirable." 223 Mass. at 16, 111 N.E. 678. The SJC noted in *Nashua River* that virtually all state and federal courts at that time refused to enforce forum selection clauses. Thus, a fundamental policy consideration, which underlay the *Nute* and *Nashua River* decisions, has undergone an about-face in recent years, as forum selection clauses are now *favored* by the majority of state courts and by the federal courts. *See supra* p. 1117.

These historical changes may well explain why the only other rationale for the *Nute* and *Nashua River* precedents—the presumed invalidity of contractual attempts to "oust appropriate courts of their jurisdiction," *Nashua River,* 223 Mass. at 19, 111 N.E. 678—has been rejected by the Supreme Court as "hardly more than a vestigial legal fiction," predicated on "a provincial attitude regarding the fairness of other tribunals." *Zapata,* 407 U.S. at 12, 92 S.Ct. at 1914. As noted, however, the SJC is not bound by the view expressed in *Zapata,* and its adoption cannot be presumed. *See also Ernest & Norman Hart Bros.,* 18 Mass.App.Ct. at 64, 463 N.E.2d at 358–59 ("[i]f the Supreme Judicial Court should now decide to [follow *Zapata* ], it may well adopt the modern view prospectively only and in very flexible form"); *see also White-Spunner Constr., Inc. v. Cliff,* 588 So.2d 865, 866 (Ala.1991) (reaffirming invalidity of forum clauses under Alabama law).

each and every written term of a contract," *Lyall v. DeYoung*, 42 Wash.App. 252, 256, 711 P.2d 356, 359 (1985); "simply because the provision was part of what is called the 'boilerplate' section of the contract does not in itself make it unfair." *Reynolds Indus., Inc. v. Mobil Oil Corp.*, 618 F.Supp. 419, 423 (D.Mass.1985).

■ Lambert does not base the present claim on the ground that the forum selection clause is a "boilerplate" provision. The principal contention is that the forum selection clause should be overturned because it would be "seriously inconvenient" for Lambert. Lambert cites *Exum*, 17 Wash.App. at 478–79, 563 P.2d at 1315, in which the Washington Court of Appeals upheld a trial judge's discretionary refusal to dismiss an action under a forum clause which required the suit to be brought in New York. The *Exum* court noted that "all contacts were made in Washington, partial performance was to be within the state, all the plaintiff's witnesses reside within the State of Washington, Defendant's Vice President who solicited Plaintiff resides in [a state other than New York, and] it would be unjust, inequitable, and unreasonable to require Plaintiff and all the witnesses to travel to New York State to litigate the case." *Id.* See also *Gold Seal Chinchillas*, 69 Wash.2d at 46–47, 416 P.2d at 686 (refusing to transfer case to contractually selected out-of-state forum, on ground that chosen forum was "totally unreasonable": all parties and witnesses resided in Washington, contracts were made and to be performed entirely in Washington, and the dispute was governed by Washington law).

We think Lambert misinterprets *Exum*. The "serious inconvenience" test applied in *Exum* was discussed in detail by the Supreme Court in *Zapata*, which also cited the rule of Restatement (Second) of Conflicts of Laws § 80, *see* 407 U.S. at 11, 92 S.Ct. at 1913, and which has been cited with approval by the Washington courts.

*See Bechtel Civil*, 51 Wash.App. at 146, 752 P.2d at 397 (citing *Zapata*); *see also Supreme Court Supports Enforcement, supra*, at 530 (advocating *Zapata's* application to state laws which are based on the Restatement (Second)); *see generally American Mobile Homes of Washington, Inc. v. Seattle–First Nat'l Bank*, 115 Wash.2d 307, 313, 796 P.2d 1276, 1279 (1990) ("when a state rule is similar to a parallel federal rule we sometimes look to analysis of the federal rule for guidance"). *Zapata* held (as a matter of federal law) that:

> [W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable. *We are not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum. In such a case, the serious inconvenience of the contractual forum to one or both of the parties ... might suggest that the agreement was an adhesive one, or that the parties did not have the particular controversy in mind when they made their agreement; yet even there the party claiming should bear a heavy burden of proof.*

407 U.S. at 16–17, 92 S.Ct. at 1916–17 (emphasis added).[13] We think *Exum* and, more importantly, *Gold Seal Chinchillas*, fall within the exception *Zapata* articulated to forum selection clause enforceability: in each case, the defendant sought transfer of an "essentially local dispute" to a selected forum which was alien to *all parties* (so far as the record shows), and largely unconnected with the contractual relations at issue in the case. *See Gold Seal Chinchillas*, 69 Wash.2d at 46–47, 416 P.2d at 686;

---

**13.** Later federal cases, in this and other circuits, have sometimes applied an even stricter standard, requiring sophisticated commercial defendants to show that they would suffer such serious inconvenience in litigation in the foreign forum that they would be effectively deprived of their day in court. *See Fireman's Fund*, 492 F.2d at 1297; *see also, e.g., Pelleport Investors*, 741 F.2d at 279; *LFC Lessors, Inc. v. Pearson*, 585 F.Supp. 1362, 1365 (D.Mass.1984).

*Exum,* 17 Wash.App. at 479, 563 P.2d at 1316–16.

The bases for the parties' selection of the Washington forum in the present case are quite dissimilar. The Kysars reside and operate their business in Washington. Their interest in selecting a forum—the consolidation of litigation involving far-flung operations—was eminently reasonable. The contract in litigation has strong links to Washington, where it was accepted and largely performed. Moreover, Washington is no more "remote" from Lambert's place of business than when he executed the order form, either on the occasion of the present agreement or prior agreements between these parties. The forum selection clause was printed clearly on the reverse side of the form, in plain language, and the contract was not so long as to make it difficult or impossible to read. *See D'Antuono v. CCH Computax Sys., Inc.,* 570 F.Supp. 708, 714 (D.R.I.1983) (Selya, J.) (interpreting buyer's signature in similar circumstances as indicative of awareness of forum selection clause and its significance); *Lyall v. DeYoung,* 42 Wash.App. 252, 256, 711 P.2d 356, 358–59 (1985), *rev. den.,* 105 Wash.2d 1009 (1986) ("[i]n the absence of fraud the signator is deemed to have had ample opportunity to study the contract and its provisions including recitations which are properly referenced on the back side of the instrument"); *H.D. Fowler Co. v. Warren,* 17 Wash.App. 178, 180–81, 562 P.2d 646 (1977) (enforcing attorney fee provision on back of contract despite signatory's claimed ignorance of its presence). There is no indication that Lambert's assent resulted from "overreaching or the unfair use of equal bargaining power": Lambert is an experienced merchant who had purchased Christmas trees from the Kysars since 1987 and whose family had sold Christmas trees in Boston since 1953, *see* Lambert Affidavit at ¶ 3. There is nothing to suggest that he was coerced by the Kysars, or that the agreement was anything but an arms-length transaction between parties of roughly equivalent bargaining power. Under these circumstances, the contracting parties are bound to the forum selected in their contract.

### D. *Application of Forum Selection Clause*

■ Lambert asserts, finally, that even if the district court properly dismissed the *contract* claims under Rule 12(b)(6), the contract-related tort claims were not directly covered by the forum selection clause, and issues of material fact remain in genuine dispute, precluding their summary dismissal under Rule 12(b)(6). Lambert argues, in effect, that he should be permitted to escape the consequences of the parties' forum selection merely by alleging tortious conduct relating to the *formation* (rather than the performance) of their contract. We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through "artful pleading of [tort] claims" in the context of a contract dispute. *Pascalides v. Irwin Yacht Sale North, Inc.,* 118 F.R.D. 298, 301 (D.R.I.1988) (quoting *Coastal Steel,* 709 F.2d at 197); *D'Antuono,* 570 F.Supp. at 715. Although the *Zapata* Court did indicate that a forum selection clause should not be given effect if it was the product of fraud, *see* 407 U.S. at 12, 92 S.Ct. at 1914, the Supreme Court subsequently interpreted this exception, in *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), to exclude the sorts of claims raised by Lambert. The Court in *Scherk* stated that

> [the *Zapata* fraud exception] does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud ... the clause is unenforceable. Rather, it means that [a] ... forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.

*Id.* at 519 n. 14, 94 S.Ct. at 2457 n. 14 (emphasis in original); *see also* Gruson, *Forum–Selection Clauses,* 1982 U.Ill. L.Rev. at 165 ("a party should not be permitted to escape a forum-selection provision by merely calling the validity of the entire contract into question").

■ The better general rule, we think, is that contract-related tort claims involv-

ing the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties. *Compare General Environmental Science Corp. v. Horsfall*, 753 F.Supp. 664, 668 (N.D.Ohio 1990) (refusing transfer of contract-related tort claims where plaintiff asserted no breach of contract, and cause of action did not directly concern formation or enforcement of contract containing forum selection clause).

## III

## CONCLUSION

As the forum selection clause is valid, exclusive and enforceable, the present action was properly dismissed.

*Affirmed.*