Merrimack
No. 80-333

SHARON STEEL CORPORATION & a.

v.

FRANCIS E. WHALAND, INSURANCE COMMISSIONER

September 30, 1983

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester, and *Shearman & Sterling*, of New York (*Joseph A. Millimet & a.* on the brief, and *Franklin D. Kimball* orally), for the plaintiffs.

*Gregory H. Smith*, attorney general (*Marc R. Scheer*, assistant attorney general, and *Ronald F. Rodgers*, attorney, on the brief, and *Mr. Scheer* orally), for the State.

*Hamblett & Kerrigan P.A.*, of Nashua, and *Davis, Polk & Wardwell*, of New York (*Joseph Kerrigan & a.* on the brief, and *Steven F. Goldstone* orally), for the intervenor, Nashua Corporation.

*Russell B. Stevenson, Jr.*, Deputy General Counsel (*James J. Junewicz*, assistant general counsel, *& a.* on the brief, and *Mr. Junewicz* orally), for the Securities and Exchange Commission, as amicus curiae.

DALIANIS, J. (Sitting by special assignment pursuant to RSA 490:3). In *Sharon Steel Corp. v. Whaland*, 121 N.H. 607, 433 A.2d 1250 (1981), we affirmed a decision of the New Hampshire Insurance Commissioner holding that the plaintiffs Sharon Steel Corporation and Summit Systems had made a takeover bid for Nashua Corporation without complying with the provisions of RSA chapter 421-A, the Security Takeover Disclosure Act (the act). We also held that the act did not contravene the supremacy and the commerce clauses of the United States Constitution when applied to the block purchases made by the plaintiffs. The plaintiffs appealed this decision to the United States Supreme Court, which vacated our judgment and remanded "for further consideration in light of *Edgar v. Mite Corp.*, 102 S. Ct. 2629 (1982)." *Sharon Steel Corp. v. Insurance Commissioner of New Hampshire*, 102 S. Ct. 3474 (1982).

*Edgar v. Mite Corp.* was decided by the United States Supreme Court after our earlier decision in this case. In *Mite*, a divided Court declared the Illinois takeover statute unconstitutional.

The underlying facts of this case are set forth in *Sharon Steel Corp. v. Whaland*, 121 N.H. at 609–13, 433 A.2d at 1251–53, and therefore will not be repeated. However, it is necessary to review the *Mite* case and to compare RSA chapter 421-A with the Illinois statute.

RSA chapter 421-A was amended by Laws 1983, chapter 144 (effective August 6, 1983). While we have been urged by the plaintiffs to rule on the constitutionality of both the old and this revised statute, we decline to do so and limit our decision in this case to the statute as it existed prior to the amendment.

The *Mite* case arose out of a tender offer by the Mite Corporation for shares in a corporation which was ostensibly covered by the Illinois Business Takeover Act (the Illinois Act). *See* ILL. REV. STAT., ch. 121-1/2, ¶137.51 *et seq.* (1979). Mite Corporation, fearing that a cease-and-desist order would issue from the authorities in Illinois because its tender offer was being made in contravention of the Illinois Act, petitioned the United States District Court for the Northern District of Illinois for injunctive relief, prohibiting the Illinois authorities from interfering with the tender offer. The United States District Court issued the injunction, and subsequently a judgment for Mite Corporation, on the basis that the Illinois Act was preempted by the Williams Act, 15 U.S.C §§ 78m(d)–(e) and 78n(d)–(f),

and that it violated the commerce clause. Those decisions were affirmed by the Seventh Circuit Court of Appeals, and the case was appealed to the United States Supreme Court.

Although the justices of the Supreme Court did not agree as to whether the Williams Act preempted the Illinois Act, a majority of them did concur in Justice White's opinion that the Illinois Act failed the balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), and therefore imposed an unconstitutional indirect burden on interstate commerce. *Edgar v. Mite Corp.*, 102 S. Ct. at 2641. Accordingly, we must apply this test to RSA chapter 421-A. *See Agency Rent-A-Car, Inc. v. Connolly*, 686 F.2d 1029, 1036 (1st Cir. 1982).

■ The commerce clause is a limitation on the power of the States to regulate interstate commerce. But, as Justice White says in *Mite:*

> "Not every exercise of state power with some impact on interstate commerce is invalid. A state statute must be upheld if it 'regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental . . . unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.' *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 847, 25 L. Ed. 2d 174 (1970), citing *Huron Cement Co. v. Detroit*, 362 U.S. 440, 443, 80 S. Ct. 813, 815, 4 L. Ed. 2d 852 (1960)."

*Edgar v. Mite Corp.*, 102 S. Ct. at 2640.

■ Under the *Pike* test, we are to measure the burdens imposed on interstate commerce by RSA chapter 421-A and decide whether they are excessive in relation to the local interests that the act was designed to further.

With respect to the Illinois Act that was the subject of the analysis in *Mite*, the Supreme Court stated that the most obvious burden imposed "on interstate commerce arises from the statute's previously-described nationwide reach which purports to give Illinois the power to determine whether a tender offer may proceed anywhere." *Id.* at 2641–42. The focus, therefore, was put upon the extent of the reach of the Illinois Act and the breadth of the power which that statute gives to the person charged with enforcement, the Illinois Secretary of State.

■ The reach of RSA chapter 421-A, like that of the Illinois Act, is coextensive with the definition of what constitutes a target com-

pany. In New Hampshire, a target company may be a corporation: (1) organized under the laws of this State; or (2) having its principal place of business in this State; or (3) having its principal executive office within this State. RSA 421-A:2, VI and VII.

Commenting on the reach of the Illinois Act, Justice White stated:

> "[T]he Illinois law on its face would apply even if not a single one of [the target company's] shareholders were a resident of Illinois, since the Act applies to every tender offer for a corporation meeting two of the following conditions: the corporation has its principal executive office in Illinois, is organized under Illinois laws, or has at least 10% of its stated capital and paid-in surplus represented in Illinois . . . . Thus the Act could be applied to regulate a tender offer which would not affect a single Illinois shareholder."

*Edgar v. Mite Corp.*, 102 S. Ct. at 2641.

This criticism applies equally to New Hampshire's statute because there is no requirement that any of the shares of a target company be held by New Hampshire residents.

A comparison of the enforcement powers held, respectively, by the Illinois Secretary of State and the New Hampshire Insurance Commissioner indicates that there is no significant difference between the two statutes. Both persons possess the power to prevent the purchase of shares from taking place anywhere upon a finding that the purchaser has not complied with their State's takeover statute. *See* RSA 421-A:6; ILL. REV. STAT., ch. 121-1/2 ¶ 137.62.

Although the Illinois Act grants the secretary of state the additional power to pass judgment on the substantive fairness of the offer and to block the offer from going forward if he deems it inequitable, *see id.* at ¶ 137.57E, the absence of this power in the New Hampshire Insurance Commissioner mitigates only slightly his "power to determine whether a tender offer may proceed." *Edgar v. Mite Corp.*, 102 S. Ct. at 2642. The delay caused by the exercise of his authority itself interferes with the trading of securities and thus indirectly burdens interstate commerce. *See National City Lines, Inc. v. LLC Corp.*, 687 F.2d 1122, 1131 (8th Cir. 1982).

Against these burdens on interstate commerce, we must examine under the *Pike* test the local interests that the act was designed to further in order to determine whether a proper balance has been struck. *See Edgar v. Mite Corp.*, 102 S. Ct. at 2641–43. In *Mite*, Illinois argued that its statute was enacted (1) to protect resident security holders and (2) to regulate the internal affairs of Illinois corpo-

rations. *Id.* at 2642. New Hampshire makes similar claims with respect to its act. In *Mite*, however, the majority of justices were not convinced of the cogency of these asserted local interests and concluded that the Illinois Act added very little to the protection afforded shareholders by the Williams Act. *Id.* In an attempt to distinguish *Mite* from the case *sub judice*, New Hampshire points to the different factual setting of the two cases: *Mite* involved a tender offer, while here we have large-block, open-market purchases of the securities of Nashua Corporation. The State goes on to assert that the Williams Act affords shareholders less protection for open-market transactions constituting a "creeping tender offer" than for purchases made pursuant to a true tender offer. *See generally* Maiwurm and Tobin, *Beachhead Acquisitions: Creating Waves in the Market Place*, 38 BUS. LAW. 401 (1983).

██ Although the State's argument has some merit, we do not believe the Supreme Court's holding in *Mite* would have been any different if the facts there had involved open-market purchases. *See Telvest, Inc. v. Bradshaw*, 697 F.2d 576, 580–81 (4th Cir. 1983); *Esmark, Inc. v. Strode*, 639 S.W.2d 768 (Ky. 1982). Accordingly, we also conclude that the local interests that the act purports to further are not of sufficient weight to offset the substantial burden that the act imposes on interstate commerce.

 In conclusion, the statutory definition of a target company is broader than necessary to ensure that the State is regulating only corporations that have both substantial assets and shareholders in New Hampshire. By reaching too far, the act fails to strike the balance that the United States Constitution requires. Also, the act fails to add in a substantial way, and in an even-handed manner, to the protections afforded shareholders by federal legislation. Accordingly, we hold that RSA chapter 421-A is unconstitutional because of the extent of the indirect burden it imposes on interstate commerce.

*Reversed.*

BOIS, J., sat at oral argument prior to his retirement and continued to participate thereafter by special assignment under RSA 490:3 (Supp. 1979); DALIANIS and NADEAU, JJ., superior court justices, sat by special assignment under RSA 490:3 (Supp. 1979); KING, C.J., and DOUGLAS, BROCK and SOUTER, JJ., did not sit; BOIS, J., dissented; the others concurred.

BOIS, J., dissenting: The United States Supreme Court in *Mite* addressed issues of constitutional law with reference to a factual set-

ting that differs materially from the facts in the present case. *Mite* involved a formal tender offer, while here we have large-block, open-market purchases of shares of a corporation. It has long been the practice of this court "to presume that a legislative act is constitutional and not to declare it invalid except on 'unescapable grounds.' " *Niemiec v. King,* 109 N.H. 586, 587, 258 A.2d 356, 358 (1969); *Chronicle and Gazette Publishing Co., Inc. v. Attorney General,* 94 N.H. 148, 48 A.2d 478 (1946). I see nothing in *Mite* that makes questionable our earlier reasoning or makes "unescapable" a finding that RSA chapter 421-A is unconstitutional.

Furthermore, Justices Powell and Stevens (whose concurring opinions were necessary to achieve a majority ruling) view with approval the States' acting in some circumstances to protect local corporations from hostile tender offers. For the States so to act, there must necessarily be some extrastate effect on the trading of shares of the corporation involved if the State statute is to have any efficacy. It seems logical to me to grant a State statute more latitude in its effort to pursue a legitimate State interest with respect to open-market purchases, which remain largely unregulated under federal law, than with respect to formal tender offers, which are the subject of considerable regulation under the terms of the Williams Act. Accordingly, under the analysis that the commerce clause requires, the State interest in protecting local corporations should be given more weight in the context of open-market purchases, thus allowing the court to tolerate a greater degree of impact on interstate commerce. I would, therefore, rule that, in the factual setting of this case, RSA chapter 421-A strikes a proper balance for purposes of the commerce clause of the United States Constitution.