**Northern Laminate v. Electra Polymers CV-94-598-B    01/12/96**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Northern Laminate Sales, Inc.

_____v.                                                  Civil No. 94-598-B

Electra Polymers & Chemicals, Ltd.

_____and

Electra Polymers & Chemicals of America


## O R D E R


Northern Laminate Sales, Inc. claims that Electra Polymers & Chemicals, Ltd., an English corporation, and its American subsidiary, Electra Polymers & Chemicals of America, are liable for breach of contract, unfair trade practice violations, and unjust enrichment. Defendants have moved to dismiss alleging that (1) the contract's forum selection clause prevents Northern from bringing its claims anywhere other than in an English court; (2) Northern's New Hampshire unfair trade practice claims are defective because the contract's choice-of-law clause specifies that Northern's claims must be governed by English law; and (3) Northern's claims against Electra America are defective because they fail to allege that Electra America is liable as an agent for the actions of its parent. For the reasons that follow, I

grant the motion insofar as it applies to Northern's unfair trade practice claims and its other claims against Electra America.

## I.  BACKGROUND[1]

Northern contracted with Electra to become a non-exclusive distributor of Electra's products in New England on September 10, 1992.  The parties renewed their relationship with an identical contract on January 20, 1994.

In late August, 1994, Northern convinced Ford Motor Company to authorize its suppliers to use Electra's products.  This authorization guaranteed Electra a large increase in sales.  On August 25, 1994, Northern reached an agreement to supply Electra's products to Peak Electronics, a major Ford supplier. Notwithstanding these achievements, Electra terminated its contract with Northern on August 29, 1994 without complying with the contract's requirement that termination occur only upon the provision of three months advance written notice.

The identical September 10 and January 24 contracts contain the following combined choice-of-law and forum selection clause: "The Agreement is to be framed in accordance with the laws and

---

[1]  The background facts are drawn from the complaint and the contracts referenced therein.  The facts are stated in the light most favorable to Northern.

2

practices, and under the jurisdiction of the Courts of England."
Defendants rely on this clause in contending that Northern's
claims should be dismissed for lack of venue.  They also contend
that the clause precludes Northern from basing claims on New
Hampshire's unfair trade practice law.  Finally, Electra America
contends that Northern's claims against it are defective because
they fail to allege facts that would subject it to liability for
the acts of its parent.  I address each argument in turn.

## II.  **ANALYSIS**

A.  Venue

In resolving this venue dispute, I begin by determining the
proper basis for defendants' motion to dismiss.  I then describe
the applicable standard of review and address an inherent choice-
of-law question.  Finally, I turn to the question of the clause's
meaning.

**1.   Can a motion to dismiss for lack of venue
      be based on a forum selection clause?**

The Supreme Court appears to be of two minds as to whether a
forum selection clause can serve as the basis for a motion to
dismiss for lack of venue.[2]  In Stewart Organization, Inc. v.

---

[2]  Defendants' alternative claim that the forum selection
clause divests the court of subject matter jurisdiction is

3

<u>Ricoh Corp.</u>, 487 U.S. 22 (1988), the defendant sought either dismissal for improper venue pursuant to 28 U.S.C.A. § 1406(a) or a transfer to what it contended was a more convenient forum pursuant to 28 U.S.C.A. § 1404(a). The Supreme Court decided the case pursuant to § 1404(a) and disposed of the venue argument by observing in a footnote that "the parties do not dispute that the District Court properly denied the motion to dismiss the case for improper venue under 28 U.S.C. § 1406(a) because respondent apparently does business in the district where the complaint was filed." <u>Id.</u> at 28 n.6. Thus, the court implied that a forum selection clause could not deprive a court of venue. In contrast, in <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585 (1991), the court agreed that the district court had properly relied on a forum selection clause in granting defendant's summary judgement motion alleging lack of venue. <u>Id.</u> at 597.[3]

plainly without merit. <u>See</u> <u>M/S Bremen v. Zapata</u>, 407 U.S. 1,12 (1972) ("No one seriously contends in this case that the forum selection clause `ousted' the court of jurisdiction over Zapata's action."); <u>Lambert v. Kysar</u>, 983 F.2d 1110, 1119 n.11 (1st Cir. 1993) (choice of forum clause does not divest the court of subject matter jurisdiction).

[3] The Supreme Court did not state expressly that summary judgement was appropriate because the district court lacked venue. However, the Court upheld the district court's decision and the Ninth Circuit's opinion in the case notes that the district court had based its decision on lack of venue. <u>See</u> <u>Shute v. Carnival Cruise Lines, Inc.</u>, 897 F.2d 377, 388 n. 9 (9th

4

The First Circuit has also issued conflicting opinions on the subject. In Lambert, the court stated that "it is well established that a forum selection clause does not divest the court of . . . proper venue in a contract dispute." 983 F.2d at 1119 n. 11. Accordingly, the court concluded that the defendant should have raised his claim as a motion to dismiss for failure to state a claim rather than as a challenge to venue. Id. Notwithstanding this apparently clear statement of law, the court has more recently stated, without discussing Lambert, that "venue provisions have long been subject to contractual waiver through a valid forum selection agreement." United States v. G & C Enterprises, Inc., 62 F.2d 35, 36 (1st Cir. 1995). This appears to follow the approach taken by most other circuits that have addressed the subject. See Paper Express Ltd. v. Pfakuch Machinen GmBH, 972 F.2d 753, 754 (7th Cir. 1992) (forum selection clause may provide basis for dismissal because of lack of venue); Riley v. Kingsbury Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir.), cert. denied, 113 S. Ct. 658 (1992), (forum selection clause may provide basis for dismissal for lack of venue); Jones v. Weibrecht, 901 F.2d 17, 19 (2nd Cir. 1990) (per curiam) (forum selection clause may provide basis for dismissal

cir. 1990).

5

for lack of venue).  I cannot reconcile <u>Lambert</u> with <u>Carnival Cruise Lines</u> and <u>G & C</u>.  Accordingly, I apply <u>G & C</u> and recognize defendants' right to base its venue challenge on the contract's forum selection clause.[4]

## 2. What standard of review governs a motion to dismiss for lack of venue?

The First Circuit has not specified the standard that a district court should use in resolving venue disputes.  However, in the related context of a challenge to personal jurisdiction, the court has determined that the standard to be employed depends upon whether the court holds an evidentiary hearing.  <u>See</u> <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671, 675-77 (1st Cir. 1992).  If no hearing is held, the court makes only a <u>prima</u> <u>facie</u> determination of jurisdiction.  <u>Id.</u>  Accordingly, the court does

_____

[4] A forum selection clause may also be considered in connection with a motion to dismiss based on either the statutory or common law doctrines of <u>forum</u> <u>non</u> <u>conveniens</u>.  <u>See, e.g.</u>, <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29-32 (1988) (forum selection clause is a significant factor in resolution of <u>forum</u> <u>non</u> <u>conveniens</u> claim based on 28 U.S.C.A. § 1404(a)); <u>Royal Bed & Spring Co. v. Famossul Industries</u>, 906 F.2d 45, 51 (1st Cir. 1990) (applying <u>Stewart</u> in analyzing effect of forum selection clause in the context of a common law <u>forum</u> <u>non</u> <u>conveniens</u> claim).  The statutory <u>forum</u> <u>non</u> <u>conveniens</u> doctrine is inapplicable in this case because England is the alternative forum and the court lacks the power to transfer a case to a foreign court.  <u>See</u> 28 U.S.C.A. § 1404.  Moreover, I do not consider whether dismissal is required under the common law doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> because defendants have not invoked this doctrine in support of their motion.

6

not find facts but rather accepts the truth of the plaintiff's factual averments to the extent that they are supported by evidence of specific facts set forth in the record. <u>Id.</u> Since at least one other circuit requires district courts to use a similar standard in venue disputes, <u>see</u> <u>Home Insurance Co. v. Thomas Industries, Inc.</u>, 896 F.2d 1352, 1354-55 (11th Cir. 1990), and the parties have not drawn my attention to any precedents suggesting a different approach, I will determine the venue question under the <u>prima</u> <u>facie</u> standard outlined in <u>Boit</u>.

### 3. What law governs the interpretation of the contract's forum selection clause?

Before I can interpret the contract's forum selection clause, I must determine what law governs the interpretive question. Unlike questions concerning the enforceability of a forum selection clause, questions of contract interpretation plainly are resolved in diversity cases by using state law.[5] <u>Compare</u> <u>In Re Diaz Contracting, Inc.</u>, 817 F.2d 1047, 1050 (3rd Cir. 1987) (interpretation of a forum selection clause ordinarily

---

[5] Defendants assert that federal law should govern the interpretation of the contract's forum selection clause. However, the authorities they site for this proposition deal with the question of a forum selection clause's enforceability rather than its meaning. Since they provide no other support for their contention, I conclude that federal common law has no bearing on the interpretive question.

presents a question of state law) and Provident Mutual Life Ins. Co. v. Bickerstaff, 818 F. Supp. 116, 118 (E.D. Pa. 1993) (interpretation of a forum selection clause presents a matter of state law) with Ricoh, 487 U.S. at 30 (applying federal law to a determination of contract's enforceability in connection with a motion to transfer pursuant to § 1404(a); Royal Bed, 906 F.2d at 49 (applying federal law to a determination of the enforceability of a forum selection clause in the context of a common law forum non conveniens motion); Lambert, 983 F.2d at 1115 (noting that the choice-of-law question governing the enforceability of a forum selection clause in other contexts has not been determined in the First Circuit).

The two jurisdictions whose laws could potentially apply in this case are England and New Hampshire. Since the first step in any choice-of-law analysis is to determine whether a conflict exists, Lambert, 983 F.2d at 1113, I address this issue first.

The legal principles New Hampshire courts use when inter-preting contracts are well established. Contracts should be interpreted to reflect the parties' intentions as manifested by objective or external criteria. Parkhurst v. Gibson, 133 N.H. 57, 61 (1990); Tentindo v. Locke Lake Colony Ass'n, 120 N.H. 593, 599 (1980). Therefore, the court will look first to the language

8

of the contract to determine whether the meaning of disputed terms can be established unambiguously.  <u>Gamble v. University of New Hampshire</u>, 136 N.H. 9, 13 (1992); <u>Logic Assoc., Inc. v. Timeshare Corp.</u>, 124 N.H. 565, 572 (1984).  If the contract is ambiguous, extrinsic sources may be consulted to determine the parties' objective intentions.  <u>See</u> <u>MacLeod v. Chalet Suisse Int'l, Inc.</u>, 119 N.H. 238, 243 (1979).  New Hampshire courts apply these accepted principles to the interpretation of forum selection clauses.  <u>See, e.g.</u>, <u>Dancart Corp. v. St. Albans Rubber Co.</u>, 124 N.H. 598, 601-02 (1984).

Defendants assert that English courts would treat a forum selection clause as exclusive even if it is "arguably non-exclusive."  The only decision they cite in support of this principle, however, fails to support their claim.  In <u>First City Capital Ltd. v. Wheeler Computer Corp.</u>, [1987] 44 D.L.R. (4th) 301, 305, the sole issue before the Canadian appellate court was whether the trial court had personal jurisdiction over the defendant.[6]  Although the defendant did no business in Alberta, where the complaint was filed, it had signed a contract providing that the province of Alberta "shall have jurisdiction over all

---

[6]  Defendants assert that English courts are likely to follow Canadian precedents.

9

disputes which may arise hereunder."  Id.  The court rejected defendant's claim that this clause was merely an agreement to submit the dispute to the court's jurisdiction rather than an agreement to submit to personal jurisdiction.  Id. at 305. However, the opinion provides no guidance as to how a Canadian court would interpret an ambiguous forum selection clause.  Since this is the only authority defendants cite for the proposition that a conflict exists between New Hampshire and English law, I reject their argument, conclude that no conflict exists, and interpret the forum selection clause using New Hampshire law.[7]

### 4.   Does the contract's forum selection clause provide for exclusive venue or permissive jurisdiction?

Using New Hampshire principles of contract interpretation, I interpret the contract's forum selection clause by first looking at the language of the clause itself and then turning, if necessary, to extrinsic evidence to address any ambiguities.

Unfortunately, the contract's choice of forum clause reasonably could be given different meanings depending upon how it is parsed.  Read one way, the clause states "the agreement is to be framed . . . under the jurisdiction of the courts of

---

[7]  Pursuant to Fed. R. Civ. P. 44.1, I have relied on the parties to present any pertinent English law.  See Fed. R. Civ. P. 44.1, advisory note ("the court is free to insist on a complete presentation [of foreign law] by counsel").

10

England" (emphasis added). Alternatively, it could be read to state "the agreement is to be . . . under the jurisdiction of the courts of England." The first reading unambiguously confers exclusive venue on the courts of England because only an English court could "frame" the agreement "under the jurisdiction of the courts of England." However, the second reading reasonably could be interpreted to confer only permissive jurisdiction. This is so because the words "is to be" could reasonably be understood to mean "shall" and, saying that a contract "shall be under the jurisdiction of the courts of England" could be understood to confer permissive jurisdiction rather than exclusive venue on the English courts. Dancourt, 124 N.H. at 602 ("this contract shall be subject to the jurisdiction of the English courts" is a conferral of jurisdiction, not an exclusive choice of forum); see also John Boutari & Son, Wine & Spirits, S.A. v. Attiki Importers & Distributors, 22 F.3d 51, 52-53 (2nd Cir. 1994) ("[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the Greek courts" does not provide for exclusive venue); Caldas & Sons, Inc. v. Willingham, 17 F.3d 123, 127 (5th Cir. 1994) ("the laws and the courts of Zurich are applicable" is ambiguous).

Defendants have failed to provide any extrinsic evidence to

11

support their claim that the clause provides for exclusive venue in the English courts. Northern, in contrast, has produced an affidavit from its president to support its position that the clause was not intended to restrict Northern's right to sue in this district. Applying the prima facie standard to this evidence, I conclude that defendants cannot prevail with their forum selection clause argument.[8]

B.    Unfair Trade Practice Claims

Northern bases its unfair trade practice claims on N.H. Rev. Stat. Ann. § 358-A (1994). Defendants contend that these claims necessarily fail because the contract's choice-of-law clause provides that English law must govern any claims related to the contract.[9]

---

[8]    I would reach the same result if, following Lambert, I had dealt with defendants' claim as a motion to dismiss for failure to state a claim pursuant to fed. R. civ. P. 12(b)(6). Because I conclude that the choice of forum clause is ambiguous, Northern's complaint would survive the liberal standard that governs a Rule 12(b)(6) motion. See generally, Acadia Motors, Inc. v. Ford Motor Co., 44 F.3d 1050, 1058 (1st Cir. 1995) (dismissal proper only where plaintiff can prevail under no set of facts).

[9]    Defendants have moved to dismiss both Northern's unfair trade practice claims and its claims against Electra America pursuant to Rule 12(b)(6). Accordingly, in determining the sufficiency of these claims, I construe the complaint's allegations in the light most favorable to Northern and dismiss only if Northern would not be entitled to relief under any plausible interpretation of the pleaded facts. See, e.g., Acadia

12

A federal court sitting in diversity must apply the law of the forum state to determine whether to enforce a choice-of-law clause. See Crellin Technologies v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994); Northeast Data Systems, Inc. v. McDonnell Douglas Computer Systems Co., 986 F.2d 607, 610 (1st Cir. 1993); Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) (federal court sitting in diversity must apply substantive law of forum state) and Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941) (Erie mandates application of forum state's conflicts of laws rules)). Thus, I must look to New Hampshire law to decide whether to enforce the parties' choice-of-law clause.

Under New Hampshire law, "`where parties to a contract select the law of a particular jurisdiction to govern their affairs, that choice will be honored if the contract bears any significant relationship to that jurisdiction.'" Kentucky Fried Chicken Corp. v. Collectramatic, 130 N.H. 680, 684 (1988) (quoting Allied Adjustment Serv. v. Heney, 125 N.H. 698, 700 (1984)); Ferrofluidics Corp. v. Advanced Vacuum Components, Inc., 968 F.2d 1463, 1467 (1st Cir. 1992) (reviewing New Hampshire law)

Motors, 44 F.3d at 1058 (1st Cir. 1995).

13

(issue is "whether the chosen jurisdiction has <u>any</u> significant relationship, rather than whether another jurisdiction has a <u>more</u> significant relationship"). New Hampshire essentially follows the Restatement (Second) of Conflict of Laws ("Restatement") § 187 (1969).[10] <u>See</u> <u>Allied</u>, 125 N.H. at 700. The Restatement adds that a court should not enforce the parties' choice-of-law if it would violate a fundamental public policy of the forum state by doing so. Restatement § 187(2)(b). Furthermore, the Restatement explains that the same principles apply to choice-of-law clauses either designating the law of another State of the United States

_____

[10] § 187(2) states, in pertinent part:

The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

    (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

    (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

14

as a law of a foreign nation.  Restatement § 10.

Incorporation or domicile of one of the contracting parties in a jurisdiction satisfies the requirement of a significant relationship between the contract and the designated jurisdiction.  Ferrofluidics, 968 F.2d at 1467-68; Restatement § 187, cmt. f.  See, e.g., Allied, 125 N.H. at 700 (contract significantly related to Massachusetts because Allied had place of business there and was incorporated there).

According to Northern's complaint, defendant Electra is incorporated in England and has a place of business at Chiddingstone Causeway, Near Tonbridge, Kent, England.  Thus, the contract bears a significant relationship to England.  Although I specifically ordered the parties to discuss the choice-of-law issues presented by this case, neither has discussed whether enforcement of the choice-of-law clause would violate public policy.  Nor do the parties provide any guidance as to whether English law provides protections similar to those provided by N.H. Rev. Stat. Ann. § 358-A.  Accordingly, I enforce the parties' choice of English law.

Northern argues without identifying any supporting authority, that the clause "[t]he Agreement is to be framed in accordance with the laws and practices  . . . of England" means

15

merely that the parties may not rely on law which is in discord with the law of England.  Because defendants have not demon-strated that English law is contrary to N.H. Rev. Stat. Ann. § 358-A, Northern contends, I should assume that it is "in accordance with" English law.  I disagree.  While "accordance" literally means only "agreement" or "conformity," Random House Unabridged Dictionary 12 (2d ed. 1993), such an interpretation would be self-contradictory in practice.  The parties could not have intended to make interpretation of their contract more predictable by selecting a body of law and, at the same time, intended to make it less predictable by subjecting their agreement to a court's determination as to whether the law of England is consistent or inconsistent with the law of other jurisdictions.

Second, Northern argues that the choice-of-law clause does not govern its unfair trade practice claims because those claims allege wrongdoing independent of the contract.  There are no New Hampshire cases on this subject.  When New Hampshire law is silent on an issue concerning § 358:A, the New Hampshire Supreme Court frequently relies on interpretations of Massachusetts' similar statute, M.G.L.A. c. 93A ("93A").  See Chase v. Dorais, 122 N.H. 600, 601 (1982).  If a 93A claim is essentially an

16

"embroidered 'breach of contract'" claim, it is subject to the choice-of-law clause in the parties' contract and therefore must be dismissed. Northeast Data Systems, 986 F.2d at 609-11 (interpreting Massachusetts law) (93A claim for breaching contract in bad faith was subject to choice-of-law clause, 93A claim for fraudulent inducement to form contract was not). See also Worldwide Commodities v. J. Amicone Co., 36 Mass. App. Ct. 304, 305, 307-08, 630 N.E.2d 615, 616, 617-18 (1994) (93A claim subject to choice-of-law clause where manufacturer breached agreement not to sell its products in exclusive distributor's territory). Cf. Lambert, 983 F.2d at 1121-22 (plaintiff could not evade forum selection clause by bringing 93A claim). In contrast, if a 93A claim is essentially a claim of tortious conduct, it is not subject to a choice-of-law clause in the parties' contract. See, e.g. Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 575, 580 n.9, 646 N.E.2d 741, 744, 746 n.9 (1995) (93A claim of "precontract deceit" not subject to choice-of-law clause); Computer Systems Eng'g, Inc. v. Qantel Corp., 571 F. Supp. 1365, 1367 (D. Mass. 1983), aff'd, 740 F.2d 59 (1984), (interpreting Massachusetts law) (93A claim of fraudulent inducement to contract not subject to choice-of-law clause). Cf. Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass. App. Ct.

17

545, 550, 649 N.E.2d 791, 794 (1995) (93A claim that defendant lied about the time it would need to construct labelling machine to induce plaintiff to agree to buy machine not subject to contractual limitation of liability).

According to the complaint, Northern went through a lengthy process to secure Ford Motor Company's approval to sell defendants' products to companies producing parts for Ford. "Ford approval" guarantees a high volume of sales. Days after gaining Ford approval and agreeing to sell defendants' products to Peak Electronics, a major Ford supplier, Electra terminated its agreement with Northern. Northern does not allege that defendants committed any wrongdoing besides breaching the contract in bad faith. This is precisely the kind of contract-based unfair trade practice claim held to be subject to a choice-of-law clause in Northeast Data Systems and Worldwide Commodities. Therefore, defendants' motion to dismiss Northern's unfair trade practice claims (Counts II and III) is granted.

### III. ELECTRA AMERICA

Defendants contend that I must dismiss all claims against defendant Electra America because it acted only as Electra's

18

agent and cannot be liable for Electra's breach of contract.  To decide this issue, I rely on New Hampshire law.[11]  See, e.g., Brennan v. Carvel Corp. 929 F.2d 801, 810 (1st Cir. 1991) (sitting in diversity, Court of Appeals relies on Massachusetts law to decide agency issue in case brought in district court in Massachusetts).  See also Erie, 304 U.S. at 78 (federal court sitting in diversity must apply substantive law of forum state).

Under New Hampshire law, when an agent of a disclosed principal contracts on behalf of the principal with a third party, the agent is not liable to the third party unless the parties agreed that the agent would be liable.  See E. A. Strout Farm Agency v. Worthen, 81 N.H. 95, 96-98 (1923) (where plaintiff knew that son acted as mother's agent in selling farm, son was not liable for contract); Kaulback v. Churchill, 59 N.H. 296, 296-97 (1879) (New Hampshire agent of disclosed Massachusetts principal not liable on contract for sale of apples).  Conversely, where an agent acts on behalf of an undisclosed principal, leading the third party to believe that the agent is the contracting party, the agent is liable.  O'Connor v. Hancock,

_____

[11] Because neither party has shown that the law of England conflicts with the law of New Hampshire on this issue, or argued that law of England or any other jurisdiction should apply, I apply the law of New Hampshire.

19

135 N.H. 251, 212 (1992).

New Hampshire generally follows the Restatement (Second) of Agency (1957). See, e.g., Bradley Real Estate Trust v. Plummer & Rowe Ins. Agency, 136 N.H. 1, 3 (1992); Hoyt v. Horst, 105 N.H. 380, 386 (1964). Section 320 of the Restatement states: "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." This rule applies even where the principal resides in a foreign country, although the fact that the principal is foreign "makes it easier than if the principal were domestic to infer an intent to make the agent a party." Restatement (Second) of Agency § 320 cmt. d. Section 328 of the Restatement adds: "An agent, by making a contract . . . on behalf of a . . . competent disclosed principal . . . does not thereby become liable for its nonperformance."

Read in the light most favorable to Northern, the complaint does not allege that Electra was an undisclosed principal, that the parties "otherwise agreed" that Electra America would be liable, or that Northern had any reason, such as the custom of the industry, to assume that Electra America would be liable. Regarding the parties first contract, formed September 10, 1992, paragraph seven of the Complaint states: "Northern entered into

20

a contract with Electra Polymers & Chemicals, Ltd., <u>via</u> Electra Polymers & Chemicals of America . . . ."  [Emphasis added.]

Thus, according to the complaint, at least for the first contract, Electra America was merely a conduit through which Northern was able to contract with Electra.  Northern alleges no facts indicating that the January 20, 1994 contract was formed differently.  Furthermore, the first paragraph of the identical September, 1992 and January, 1994 contracts states explicitly that Northern contracted with Electra Polymers & Chemicals, Ltd.: "<u>Electra Polymers & Chemicals, Ltd.</u> of Chiddingstone Causeway, Near Tonbridge, Kent, England, and [plaintiff] . . . hereby undertake to enter into a Principal/Distributorship agreement upon the following terms."  [Emphasis added.]  Read in the light most favorable to Northern, the complaint and attendant contract show unambiguously that Northern contracted with Electra, not Electra America.

Even if I could consider the facts, not alleged in the complaint, which Northern presents in its <u>Objection To Defendants' Motion To Dismiss</u>, <u>see</u> Fed. R. Civ. P. 12(b), I would dismiss Northern's claims against Electra America.  Northern claims that M. Lee Collier, who signed the contract, is vice-president of Electra America.  Northern also presents letters

21

showing that Electra America arranged and terminated both contracts with Northern. These facts merely demonstrate that Electra America indeed acted as Electra's agent. They do not indicate that the parties agreed that Electra America would also be liable for any breach of their contract. Defendants' motion to dismiss all claims against Electra America is granted.[12]

## IV. <u>CONCLUSION</u>

For the foregoing reasons defendants' motion to dismiss (document #2) is granted regarding all claims against Electra Polymers & Chemicals America and regarding Counts II and III against Electra Polymers & Chemicals, Ltd., and denied regarding

_____

[12] I dismiss Northern's unfair trade practices claims against Electra America because they depend on its breach of contract claims.

22

Counts I, IV and V against Electra Polymers & Chemicals, Ltd.

SO ORDERED.


_____

Paul Barbadoro
United States District Judge


January 12, 1996

cc:   Sean McGuinness, Esq.
      Garry Lane, Esq.
      Lawrence Edelman, Esq.