Rockingham
No. 2001-712

NEW ENGLAND DRAGWAY, INC.

v.

M-O-H ENTERPRISES, INC.

Argued: November 6, 2002
Opinion Issued: February 28, 2003

*Ford & Weaver, P.A.*, of Portsmouth (*Mark F. Weaver* on the brief and orally), for the plaintiff.

*Mark F. Sullivan*, of Exeter, by brief and orally, for the defendant.

*Philip T. McLaughlin*, attorney general (*Suzanne M. Gorman*, senior assistant attorney general, on the brief), for the State as *amicus curiae.*

NADEAU, J. The defendant, M-O-H Enterprises, Inc. (MOH), appeals an order by the Superior Court (*Abramson*, J.) enjoining MOH from pursuing offers to purchase the stock of New England Dragway, Inc. (Dragway) until MOH complies with RSA chapter 421-A (1998), the Security Takeover Disclosure Act (Act). We affirm.

The record supports the following facts. MOH is a corporation owned and operated by Mark O. Hildonen. In early August 2001, MOH sent a flyer to all Dragway shareholders asking them to "PLEASE ATTEND THIS VERY IMPORTANT MEETING" to be held on August 18, 2001, in Seabrook. The flyer stated, in bold lettering, that "MOH Enterprises is offering to purchase your stock." (Emphasis omitted.) It also contained the terms MOH was offering to the shareholders for their stock. MOH took these actions without making the appropriate disclosure filings required by the Act.

The Act defines a "target company" as a

> corporation whose securities are or are to be the subject of a takeover bid that has:
> (a) One hundred or more shareholders;
> (b) Its principal place of business, its principal office, or substantial assets within New Hampshire; and
> (c) Either:
>     (1) More than 10 percent of its shareholders resident in New Hampshire;

(2) More than 10 percent of its shares owned by New Hampshire residents; or

(3) Ten thousand shareholders resident in New Hampshire.

RSA 421-A:2, VII. Dragway is a New Hampshire corporation owned by more than one hundred shareholders. Approximately twenty percent of its shareholders are New Hampshire residents who collectively own roughly thirty-five percent of the shares. Accordingly, Dragway is a "target company" as defined by RSA 421-A:2, VII.

In accordance with RSA 421-A:11, III, Dragway petitioned the trial court for injunctive relief, claiming that MOH failed to comply with RSA 421-A:3 and :4. RSA 421-A:3 provides:

No offeror shall make a takeover bid unless as soon as practicable on the date of commencement of the takeover bid he files with the secretary of state and the target company a registration statement containing the information required by RSA 421-A:4 and publicly discloses the material terms of the offer.

Under RSA 421-A:4, the registration statement must include sensitive information about the offer and the offeror's personal and financial circumstances. Dragway contended that allowing the August 18, 2001 meeting to occur would cause irreparable harm to those stockholders who might contract with MOH without the benefit of MOH's disclosures, which the Act was designed to prevent.

MOH objected to the petition for injunctive relief arguing, among other things, that the Act is unconstitutional under the Commerce Clause of the United States Constitution. The trial court ruled that the defendant had failed to meet its burden of proving the statute unconstitutional and enjoined the defendant from offering to purchase the plaintiff's stock until it had complied with the statute. Contrary to the trial court's order, the defendant held the meeting. The plaintiff moved for contempt of the order, and over the defendant's objection, the trial court found the defendant in contempt and ordered sanctions. The defendant filed a motion to reconsider, which was denied. This appeal followed. The only issue on appeal is whether the Act is constitutional under the Commerce Clause of the United States Constitution.

We addressed the constitutionality of a previous version of the Act, see RSA ch. 421-A (Supp. 1979), in Sharon Steel Corp. v. Whaland, 121 N.H. 607 (1981) (Sharon I). In Sharon I, we held that former RSA chapter 421-A did not contravene the Commerce Clause of the United States Constitution when applied to block purchases made by Sharon Steel

Corporation and Summit Systems in a takeover bid for Nashua Corporation. *See Sharon I,* 121 N.H. at 618. The decision was appealed to the United States Supreme Court, which vacated our judgment and remanded for further consideration in light of *Edgar v. MITE Corp.,* 457 U.S. 624 (1982). *See Sharon Steel Corp. v. Insurance Commissioner of New Hampshire,* 458 U.S. 1101 (1982). In *MITE,* decided by the United States Supreme Court after our decision in *Sharon I,* the Court declared the Illinois Business Takeover Act (Illinois Act) unconstitutional. Upon remand, in *Sharon Steel Corp. v. Whaland,* 124 N.H. 1 (1983) (*Sharon II*), we reviewed our previous decision in light of *MITE* and reversed *Sharon I,* holding that "RSA chapter 421-A is unconstitutional because of the extent of the indirect burden it imposes on interstate commerce." *Sharon II,* 124 N.H. at 6. By the time of our decision in *Sharon II,* RSA chapter 421-A had been amended by Laws 1983, chapter 144 (effective August 6, 1983). While we were urged by the plaintiffs in *Sharon II* to rule upon the constitutionality of both the old and revised statutes, we declined to do so and limited our decision in that case to the statute as it existed prior to the amendment. In this case, we address the constitutionality of the statute in its present form.

■ Subsequent to *Sharon II,* the United States Supreme Court reviewed the Control Share Acquisitions Chapter of the Indiana Business Control Law (Indiana Act). *See CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69 (1987). In *CTS,* "the Court articulated a basic analysis for testing a statute's constitutionality under the dormant Commerce Clause, applicable to review of takeover statutes.... The Court adopted a two-pronged test for its Commerce Clause analysis: (1) Does the statute discriminate against interstate commerce? and (2) Does the statute adversely affect interstate commerce by subjecting activities to inconsistent regulations?" *Hyde Park Partners, L.P. v. Connolly,* 839 F.2d 837, 843-44 (1st Cir. 1988).

The Act applies in an even-handed manner to both intrastate and interstate offerors, so the first prong of the test is satisfied. *See id.* at 844. As to the second prong, the Act would likely survive a Commerce Clause analysis under *CTS,* even as applied to a foreign target company. The prospect of inconsistent regulation was greatly diminished by RSA 421-A:17, enacted in 1987, which provides that the Act will not apply to takeover bids for a target company organized in another jurisdiction where either compliance with both the Act and the law of the incorporating jurisdiction would be impossible, or where the Act would provide greater restrictions to the takeover bid than the laws of the incorporating jurisdiction. We need not decide this question, however, as the target

company in this case is a New Hampshire corporation with its principal place of business in New Hampshire. Thus, there is no risk of inconsistent regulation on the facts of this case, and we will not invalidate the statute based upon a hypothetical factual scenario that is not before us. *See, e.g., Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 514 (1990).

Having satisfied the two-prong test of *CTS,* we next apply the balancing test set forth in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970). *See Hyde Park Partners, L.P.,* 839 F.2d at 844-45. The disclosure provision of the Act, while not prohibiting the interstate sale of shares as did the Illinois Act invalidated by the Court in *MITE,* is also not regulating an internal corporate governance matter as did the Indiana statute upheld in *CTS.* Rather, RSA 421-A:3 falls somewhere between *MITE* and *CTS* by placing conditions upon the interstate sale of shares, and we therefore apply the *Pike* balancing test. *See Hyde Park Partners, L.P.,* 839 F.2d at 844-45. "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike,* 397 U.S. at 142; *see also MITE,* 457 U.S. at 643-46; *Sharon II,* 124 N.H. at 4. Thus, under the *Pike* test, we are to measure the burdens imposed upon interstate commerce by the Act and decide whether they are excessive in relation to the local interests that the Act was designed to further.

With respect to the Illinois Act that was the subject of analysis in *MITE,* the Supreme Court stated that the most obvious burden imposed "on interstate commerce arises from the statute's previously described nationwide reach which purports to give Illinois the power to determine whether a tender offer may proceed anywhere." *MITE,* 457 U.S. at 643. The focus, therefore, was the extent of the reach of the Illinois Act and the breadth of the power that statute gave to the person charged with its enforcement, the Illinois Secretary of State.

As we previously noted, the reach of RSA chapter 421-A, like that of the Illinois Act, is coextensive with the definition of what constitutes a target company. Unlike the Illinois Act invalidated in *MITE,* and unlike the version of the New Hampshire Act we addressed in *Sharon II,* the current version of the New Hampshire Act does not apply to takeover offers of companies with no resident shareholders. *See* RSA 421-A:2, VII (c). Indeed, the Act does not apply to a target company unless it has: (1) more than ten percent of its shareholders resident in New Hampshire; (2) more than ten percent of its shares owned by New Hampshire residents; or (3) ten thousand shareholders resident in New Hampshire. *See id.* Thus, in every application of the Act, New Hampshire indisputably has an interest

to protect. *See CTS*, 481 U.S. at 93. By limiting the definition of a target company to a business that has its principal place of business, its principal office or substantial assets in New Hampshire, the Act ensures that New Hampshire has a strong nexus with the targets of takeover bids that it regulates. Therefore, the statutory definition of a target company applies only where New Hampshire has a substantial nexus with both the corporation and the corporation's shareholders.

Like the Illinois Secretary of State, the New Hampshire Secretary of State is authorized to prevent the purchase of shares from taking place anywhere upon a finding that the purchaser has not complied with the Act. *See* RSA 421-A:6; *cf. Sharon II*, 124 N.H. at 5. The secretary of state has the discretion, within twenty days of the filing of the registration statement, to determine if a hearing is necessary to determine whether the Act has been complied with, *see* RSA 421-A:5, and can issue an order prohibiting an offer from being made or continuing up until fifty-five days after the filing of the registration statement if it is determined that the offeror failed to comply with the Act. These delays, when they occur, impose an indirect burden upon interstate commerce.

█ On the other hand, the local benefits provided by the Act are significant. The Act's disclosure provision ensures that New Hampshire shareholders receive the information necessary to make an informed decision about whether to tender their shares. Further, by protecting the interests of shareholders of corporations with their principal place of business in New Hampshire, the Act discourages tender offers, thereby protecting the State from large-scale disruptions in the local labor market. *See Hyde Park Partners, L.P.*, 839 F.2d at 846-47. Given these interests, the defendant has failed to sustain its burden of proving that the Act imposes a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142.

█ Finally, the State and the plaintiffs argue that, in order for the defendant to succeed, it must prove that the Act is unconstitutional as applied to the facts of this case. *Cf. Sirrell v. State*, 146 N.H. 364, 371 (2001). At oral argument, this point was conceded by the defendant's counsel. Dragway is a New Hampshire corporation with substantially all of its assets and operations in New Hampshire and with approximately twenty percent of its shareholders, owning more than a third of the corporation, residing in New Hampshire. On the facts of this case, we hold that the nexus between Dragway and the State of New Hampshire is

sufficient under the Commerce Clause to justify the Act's regulation of MOH's takeover bid.

*Affirmed.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.